Merlon Sullivan **HINES**, Appellant,

v.

**The STATE of Texas**, Appellee.

No. 42910.

Court of Criminal Appeals of Texas.

May 27, 1970.

On Rehearing Sept. 23, 1970.

Second Rehearing Denied Nov. 4, 1970.

Sanders, Miller & Baker, by Dee Miller, Amarillo, for appellant.

Tom Curtis, Dist. Atty. and John B. Reese, Asst. Dist. Atty., Amarillo, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is attempted burglary with two prior non capital convictions alleged for enhancement; the punishment, life.

The sufficiency of the evidence is challenged. The allegedly injured party testified that after midnight on Halloween night he was in his garage and observed a man, whom he later identified as appellant, at a door of his house with a hand on the door. At this time, he turned on the light, and the appellant fled. We need not pass upon the one man lineup identification of appellant, because we find the evidence insufficient to support the jury finding that appellant attempted to break and enter the injured party's house.

The writer has examined all previous holdings of this Court and finds that the facts in Jackson v. State, 145 Tex.Cr.R. 46, 165 S.W.2d 740, more nearly correspond to those before us here. In that case, the accused was seen on a "ledge of a window in the Stevenson's house." Judge Hawkins, with his usual dry wit, observed that "appellant was certainly apprehended in a most embarrassing and suspicious position. He may have intended to enter the house for the purpose of stealing * * *. It may be fortunate for appellant that the vigilance of the officers brought them to the scene in time to save him from effecting his designs."

This case, as well as Jackson, supra, is to be distinguished from all other cases brought under this article in that no physical injury to the building was shown which would evidence an actual intent to break and enter. Appellant was not shown to have any tools or equipment as commonly appears in cases of this nature. For all this record shows, he might have been a window peeper. See the cases annotated in 12 C.J.S. Burglary § 63.

Because the evidence is insufficient to support the conviction, the judgment is reversed and the cause remanded.

## OPINION ON STATE'S MOTION FOR REHEARING

DOUGLAS, Judge.

In the original opinion, the Court held the evidence insufficient to support the

conviction. The evidence, considered in the light most favorable to the State, will be reviewed again.

E. L. Flynt was in his garage in his yard between midnight and one o'clock in the morning checking a water heater when he heard the gate between his driveway and the yard close. He waited for someone to enter the garage, but when no one appeared, he went to the garage door and saw a man standing by the back door of his house. He then turned on the back yard light and saw appellant, who had one hand on the door handle and one hand on the wall of the house, looking through the screen door into the house.

Appellant jumped off the back step and ran and attempted to leave through another gate, but when he could not open it he jumped over the fence and fled.

On the night in question, the curtains at a large picture window in the front of the house were open. One passing the house could have seen a lady's purse on a couch in the room. The door from which appellant fled opened into the room where the purse was located.

Article 1402, Vernon's Ann.P.C., "Attempt at Burglary," provides:

"An 'attempt' is an endeavor to accomplish the crime of burglary carried beyond mere preparation, but falling short of the ultimate design in any part of it. * * *"

Here, appellant was within the enclosed back yard of a man who did not know him, after midnight, with a hand on the door. When the light was turned on, he attempted to open the gate and then jumped the fence and fled.

The jury had before it sufficient evidence to conclude that appellant was attempting to enter the house.

■ To show an attempt to commit burglary, the intent of the defendant must be established.

■ The act of breaking and entering a house at nighttime raises a presumption that it is done with intent to steal. Green v. State, Tex.Cr.App., 435 S.W.2d 513; Sikes v. State, 166 Tex.Cr.R. 257, 312 S.W.2d 524; Bonner v. State, Tex.Cr.App., 375 S.W.2d 723; Briones v. State, Tex.Cr.App., 363 S.W.2d 466; Rodgers v. State, 164 Tex.Cr.R. 375, 298 S.W.2d 827.

■ We hold that the same presumption of intent to steal applies where there has been an attempted entry at nighttime.

■ Flight may be considered by the jury as evidence of guilt. Churchill v. State, 167 Tex.Cr.R. 26, 317 S.W.2d 541; 1 Branch's Ann.P.C.2d, Secs. 158, 161.

■ The evidence showing an attempt to enter the house at nighttime, without consent of the owner, plus the presumption that such attempted entry was with the intent to commit theft, is sufficient to support the conviction.

■ It is not necessary for one to be in possession of tools to show an attempted burglary. Article 1394, V.A.P.C., provides:

"By 'breaking,' as used in this chapter, is meant that the entry must be made with actual force. The slightest force, however, is sufficient to constitute breaking; it may be by lifting the latch of a door that is shut, or by raising a window, the entry at a chimney, or other unusual place, the introduction of the hand or any instrument to draw out the property through an aperture made by the offender for that purpose."

The prior convictions against appellant were proved at the penalty stage of the trial.

■ Appellant next contends that the trial court should have instructed a verdict of not guilty on the grounds that the evidence was insufficient to establish that an out-of-court identification of the appellant by the complainant was free from taint.

The complainant Flynt positively identified appellant during the trial as the person who had his hand on the door handle at his home on the night in question. Considering appellant's ground of error sufficient to raise the question of the admissibility of the testimony of the in-court identification, the matter will be discussed.

Before Flynt was permitted to make the in-court identification of appellant, the jury was retired and it was shown that on the day after the attempted burglary Flynt and two officers went to an automobile agency where appellant was employed. Appellant was paged, and as he entered the lobby of the agency Flynt said, "There is the man right there." He testified that the officers did not indicate to him who to look at, and that he was not shown a photograph of appellant.

Further, in determining the admissibility of the in-court identification testimony, the following transpired:

"Q. (by prosecutor) Mr. Flynt, may I ask you on voir dire here, are you prepared to state that this man was the man that you saw that evening?

"A. Yes, I know it was the man.

"Q. All right. Now, please be careful about this, Mr. Flynt, but are you identifying this man here as the man you saw in the Pontiac place, or are you saying this man, you are now able to say, was the one that was at your house that night, that you recognize him?

"A. I do recognize him."

Before admitting the testimony, the court stated: " * * * It seems to me like it's just as fair an identification as you can possibly have. I don't know how on earth you would ever find an alleged criminal unless somebody identified them for the police."

Flynt was then asked by the prosecutor if he could recognize the person in the courtroom who had his hand on the door handle that night. He answered: "That is the man right over there, I would know him anywhere."

On cross-examination, it was shown that Flynt caught a prowler near his house once before and that on the night in question he almost caught appellant, and that he paid particular attention to appellant's face.

Officer Fahnert, called as a witness by appellant, testified (in the absence of the jury) that he, Officer Murphy and Flynt went to the automobile agency at approximately three o'clock on the afternoon following the attempted burglary. He testified that he did not have a warrant for the appellant's arrest, because he did not have enough information and that Flynt said he thought he could recognize the man if he could see him in person. When the three arrived at the agency, appellant was paged, and he then entered the show room. Officer Fahnert and appellant went to a small office and talked for a few seconds. After talking with appellant, Officer Hines asked Flynt if that was the man, and Flynt said, "No doubt at all."

Appellant was not arrested until some four days later.

Appellant relies upon United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), which held that an accused was entitled to an attorney at a post indictment lineup. Also cited is Rivers v. United State, 400 F.2d 935 (5th Cir.1968). There, the accused had been arrested and was "pulled" out of a car for the complainant to identify. The case was reversed because Rivers was not advised of his right to counsel prior to the confrontation and evidence of the confrontation should not have been admitted.

In the present case, appellant had not been arrested. Officer Fahnert testified that he did not have enough information to obtain a warrant for his arrest. Evidence of the confrontation was not introduced

before the jury. The trial court concluded that the identification before the arrest was fair. It would follow that his permitting the in-court identification of appellant was tantamount to a finding that such identification was not tainted by the prior confrontation.

A man under arrest or in a police wagon would more likely look like a criminal than the same man at liberty and at work. A confrontation as the one in the present case would more likely promote fairness and reliability compared to a confrontation where one is in custody, and would serve to prevent arrests of innocent suspects for identification purposes.

A single suspect confrontation may be suggestive and the court must look to all of the circumstances, and all the possible evidence concerning unreliability should be considered in determining where the requirements of due process have been met.

"Stovall v. Denno did not erect a due process barrier against all unreliable identifications; it requires exclusion only of evidence which could and should have been obtained by procedures less conducive to unreliability. Thus, as a general rule, if the confrontation was not improper, the reliability of the resulting identification is for the jury to decide." Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280 (1969), certiorari denied May 26, 1969, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245.

In the present case, it appears that when the light was turned on the appellant looked toward Flynt, who came within fifteen feet of appellant, and that Flynt was looking at his face in order to be able to identify him. However, the record does not show what description Flynt gave the officers. The record does not show what was said before the confrontation. Care should be taken to see that such details are included in the record along with specific findings of the trial court. See Martinez v. State, Tex.Cr.App., 437 S.W.2d 842.

In Elliott v. State, Tex.Cr.App., 444 S.W.2d 914, this Court held that where

complainant and another witness saw the accused in the lobby of a police station by himself the in-court identification was not the fruit of the earlier identification. There, the police in no manner suggested that the accused was the man they thought attacked the complainant.

In the present case, the officers did not indicate they thought appellant was the person wanted.

After considering all of the circumstances of the confrontation at the automobile agency, we find no violation of due process.

The motion for rehearing is granted; the judgment of reversal is set aside. The judgment is affirmed.

MORRISON, Judge (dissenting).

I am convinced of the soundness of the original opinion and dissent to the affirmance of this conviction.