Alfonso URTADO, Appellant,

v.

The STATE of Texas, Appellee.

No. 58918.

Court of Criminal Appeals of Texas, Panel No. 3.

Sept. 17, 1980.

Rehearing Denied Oct. 29, 1980.

Gerald L. Anderson, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty., and Hollis M. Browning, Asst. Dist. Atty., Lubbock, Robert Huttash, State's Atty., Austin, for the State.

1. Bob Johnson had left town the preceding night and had arranged to have DeLoach "watch the house" during his absence.

2. According to DeLoach, the sides of his and Johnson's homes were divided by a street. The backyard of each house was surrounded by a redwood fence, about six feet tall. The "fort"

Before ODOM, TOM G. DAVIS and CLINTON, JJ.

## OPINION

CLINTON, Judge.

Appeal follows conviction for the offense of attempted burglary of a habitation; the jury assessed appellant's punishment at seven years confinement.

Appellant's first ground of error complains of the sufficiency of the evidence to support the jury's finding of guilt. When viewed in a light most favorable to the verdict, the evidence adduced at trial is as follows:

On the afternoon of July 18, 1976, Tom DeLoach was resting after having finished mowing the lawn at his home, when his son came in and informed him that he had seen two women and a man in the backyard of Bob Johnson, a neighbor.[1] DeLoach accompanied the boy to the backyard and climbed up with him into the latter's play "fort," where the boy had sighted the intruders.[2]

DeLoach testified: "I saw the male making a cutting–type motion across the top between the wood and the screen on Bob Johnson's kitchen window, while the two females were standing about five yards away watching him." DeLoach did not, however, see any type of tool or other object in the hands of the man he observed. This man was later identified as appellant.

DeLoach descended the stairs of the fort, ran across the street and as he approached the side gate to Johnson's backyard, confronted two women who had just exited that gate. He talked with the women a few seconds and then observed appellant walking out of a rear gate which opened into an alley. According to DeLoach, he at

in the DeLoach backyard was built on a large platform which was almost even with the top of the redwood fence. It was from this vantage point that DeLoach and his son were able to see over their fence, across the street, and into the fenced yard of the Johnson residence.

this point exclaimed, "Are you all trying to break into that house?", or something to that effect. The women "broke and ran" down the sidewalk. Appellant was "walking at a rather rapid pace ... not really running;" DeLoach observed appellant enter a car which was parked less than one half block away. The women then arrived at the car, got in, and appellant sped away. The three were almost immediately apprehended.

The evidence established that there was an almost imperceptible ten to twelve inch cut across the top rim of the window screen to Bob Johnson's kitchen. DeLoach testified that the cut was on the screen of the same window at which he had seen appellant make the motion, and that the "gash" was in the same place it would have been "from the way [appellant's] actions indicated."

V.T.C.A.Penal Code, § 15.01, proscribes the offense of attempt:

(a) A person commits an offense if, with specific intent to commit an offense, he does an *act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.*[3]

V.T.C.A.Penal Code, § 30.02, provides in relevant part:

(a) A person commits an offense if, without the effective consent of the owner, he:

(1) *enters a habitation,* or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft; ...

 * * * * * *

(b) for purposes of this section, *enter means to intrude* :

(1) any part of the body; or

(2) *any physical object connected with the body.*

It is apparent that a person's cutting a window screen on a habitation would constitute an "entry" within the meaning of § 30.02(b), and further, that such "act"[4] would be one "amounting to more than mere preparation that tend[ed] but fail[ed] to effect commission of the offense [burglary] intended." Section 15.01(a), supra. Here, however, the "act" on which the State based the allegation of attempt, was that appellant's hand moved across the top of the screen.

 Clearly it is only from evidence of this act, coupled with evidence of a cut in the screen[5] near the point at which appellant made the "cutting–type motion," that the jury might infer that *appellant* cut the screen with an unknown instrument at the time DeLoach observed the motion; thus, the State's evidence offered to prove that appellant did a forbidden "act" was circumstantial.[6] Accordingly, it was incumbent that the State's evidence exclude every reasonable hypothesis other than that the appellant was guilty of the offense charged, in order to sustain its burden of proving that appellant, himself, committed the criminal act. *Sewell v. State,* 578 S.W.2d 131 (Tex.Cr.App.1979); *Stogsdill v. State,* 552 S.W.2d 481 (Tex.Cr.App.1977); *Culmore v. State,* 447 S.W.2d 915 (Tex.Cr.App.1969). This the State has failed to do.

We need only recount the testimony adduced by appellant–none of which contra-

---

**3.** All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

**4.** Section 1.07(a)(1) provides that an "act" is "a bodily movement, whether voluntary or involuntary, and includes speech."

**5.** Bob Johnson was unable to testify with certainty that the cut on the screen had not been there before he left town. This is of little overall relevance, however, as will be illuminated *post.*

**6.** The distinction between direct and *circumstantial evidence* is that the former directly demonstrates the ultimate fact to be proved, while the latter *is direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proved. Oliver v. State,* 551 S.W.2d 346 (Tex.Cr.App.1977); *Crawford v. State,* 502 S.W.2d 768 (Tex.Cr.App.1973).

**910**

dicted evidence presented by the State–to illustrate that the proof fell far short of excluding every reasonable hypothesis other than that appellant cut the screen of the Johnson home.

On the day of the offense, appellant had received a telephone call from eighteen year old Hope Madrid and seventeen year old Vivian Valdez, at about 4:00 p. m. The women asked appellant if he would drive them to apply for a housekeeping job they had seen advertised in the newspaper;[7] appellant agreed. He drove to the address he had been given and the women went to the door of a house. They returned and told appellant that they had gone to the wrong house; they said they thought the house they wanted was down the block, on the corner, and instructed appellant to wait. The women then walked about half a block and went up to the front door of the Johnson home.

According to Madrid, she and Valdez knocked on the door a few times. When no one answered, they walked around the house, to the back door, where they knocked some more. After satisfying themselves that no one was home, Vivian Valdez pulled out a small knife and cut the screen on a window across the point at which the screen was connected to the top of the window frame. As Valdez completed the cut, appellant appeared, coming through the gate which connected the yard to the back alley. Appellant scolded the teenagers, telling them they had "done wrong" and stepped to the window to examine the damage, running his finger over the cut on the screen. At this point appellant instructed the women that they should leave, that they were going to cause trouble. The teenagers exited the side gate as appellant walked to the far backyard to exit the rear gate, through

which he had entered. The women met DeLoach at this point and explained that they were looking for work. When De-Loach saw appellant and called out, Valdez and Madrid became afraid, started to run, and called out to appellant that he too should run.

Taking the stand in his own behalf, appellant testified that after he had waited in the car for ten or fifteen minutes he decided he had best look for the teenagers. He walked to the house on the corner the women had indicated and when he did not see them, he began to walk around the house. He soon heard Valdez and Madrid speaking in Spanish and ascertained that they were in the backyard of the residence. He found a gate to the yard from the alley and entered. Appellant testified that he saw Valdez with a knife and told her "to quit." He then walked to the window, looked, then felt with his fingers "to see if it was cut, and it was." He told the teenagers, "Let's get out of here," and started toward the gate to the alley.[8]

The only conflict between appellant's account and that of DeLoach was that appellant admitted he broke into a run close to his car because Valdez and Madrid were shouting that he should run and he became excited.

We are persuaded that the State's evidence wholly failed to exclude every reasonable hypothesis other than that the screen was intruded as a result of conduct[9] by this appellant, and we so hold. *Sewell*, supra.

The question remains, however, whether the evidence could reasonably be interpreted by the jury as showing appellant's participation in the event sufficient to render him guilty as a party. *Sewell*, supra; *Suff v. State*, 531 S.W.2d 814 (Tex.Cr.App.1976).

---

7. Hope Madrid testified that the classified ad had instructed that the applicant contact Bill Hollum, but she could not remember the address.

8. On cross examination appellant insisted that he exited a different way from Valdez and Madrid because the back gate was the way he

came in and thus the only exit from the yard he knew of.

9. Section 1.07(a)(8) defines "conduct" as "an act or omission and its accompanying mental state."

If appellant is criminally responsible for the attempted burglary committed by the conduct of Vivian Valdez, it is by virtue of V.T.C.A.Penal Code, § 7.02(a)(2).[10]

The provisions of V.T.C.A.Penal Code, § 7.01, abolished the distinction formerly made between "principals" and "accomplices" by Articles 65 and 70, Vernon's Ann. P.C. 1925. *Easter v. State*, 536 S.W.2d 223 (Tex.Cr.App.1976).

Under the former penal code,

... [t]o be guilty of a felony offense as a principal, a defendant must be actually present at the time of its commission or if not present, ... he must at the time the act is being done, be himself actively engaged in the furtherance of the common purpose and design at some other place.

*Robinson v. State*, 493 S.W.2d 780, 782 (Tex. Cr.App.1973); see also *Ex parte Prior*, 540 S.W.2d 723 (Tex.Cr.App.1976).

■ Other than appellant's testimonial denial that he knew of Valdez' intent to commit burglary, the only evidence of appellant's intent, or lack thereof, was testimony by Hope Madrid:

Q: Now, Miss Madrid, did you know what Vivian was doing when you all got in the backyard?

A: Yeah, we knew what we were doing.

　　*　　*　　*　　*　　*　　*

Q: But you hadn't discussed it with Mr. Urtado?

A: No ... [w]e didn't know him that well, and we weren't going to discuss it with him.

　　*　　*　　*　　*　　*　　*

Q: Now ... [y]ou said you weren't going to discuss it with him, had you all thought about doing this earlier in the day?

A: No, we just decided to do it when we didn't hear no answer at the door.

　　*　　*　　*　　*　　*　　*

Q [On cross-examination]: When did you decide to burglarize the house?

A: When we didn't hear no answer at the door.

　　*　　*　　*　　*　　*　　*

Q: If someone had answered the door, you would have applied for a job?

A: ... [W]e were going to ask for a job, ...

Q: Okay. Now, when did you decide to burglarize the house?

A: Well, I just finished telling you that when we didn't hear no answer at that door.

Q: Okay. And you say you told the Defendant to stay in his car?

A: Yeah.

Here, there is no showing whatever that appellant had any purpose or design in common with Vivian Valdez to make an entry into the Johnson abode with the intent to commit theft.

■ "As to those situations in which one may be guilty as a principal when actually present, the very least that is required is, in addition to physical presence, encouragement by words, or agreement to the commission of the offense. *Such agreement must be prior to or contemporaneous with the criminal event.*" *Suff*, supra, at 817.

It is apparently the State's position that proof of appellant's "flight" from the immediate scene and subsequent assistance in

---

10. The trial court charged the jury that:

　　All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

　　A person is criminally responsible for an offense committed by the conduct of another if, *acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.*

　　Mere presence alone will not constitute one a party to an offense.

driving Valdez and Madrid out of the vicinity, indicates at least a contemporaneous agreement to commission of the attempt, and appellant's culpability has thereby been established.[11]

1. The former Penal Code's provision that an "accessory"[12] was a party to a crime has been eliminated; the conduct formerly constituting accessory acts is proscribed in the new Penal Code by § 38.05 which defines a separate and distinct crime of "hindering apprehension or prosecution."[13] *Wygal v. State*, 555 S.W.2d 465 (Tex.Cr.App.1977); *Easter, supra.*

It clearly follows that a person's "accessory" conduct is no longer recognized under Texas law as conduct making him a party to the crime with which the accused was here charged. If chargeable at all, appellant's conduct would be more appropriately alleged pursuant to § 38.05, supra. See *Wygal, supra.*

For the State's failure to prove both appellant's intent to promote or assist the commission of the attempt, as well as his solicitation, encouragement, direction, aid, or attempted aid of Valdez in the commission of the attempt, this cause is reversed and remanded to the trial court for purposes of the entry of a judgment of acquittal. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

It is so ordered.

ODOM, Judge, concurring.

I concur in the majority's conclusion that the circumstantial evidence in this case is insufficient to exclude every reasonable hypothesis other than that appellant committed the charged offense. I would also rely on the additional rule, expressed in *Waldon v. State*, 579 S.W.2d 499 (Tex.Cr.App.), and quoted in *Routon v. State*, 589 S.W.2d 700 (Tex.Cr.App.):

"Where circumstantial evidence relied on by the prosecution is somewhat weak and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one

---

11. On cross examination, appellant was interrogated thus:

Q: You knew, while you were running to your car, they had tried to break into that house, didn't you?
A: I didn't know they were going to break in there.
Q: Did you think they were going to steal the screen, or what?
A: No, I didn't know what–I know they done wrong when they cut it.
Q: Okay. The only reason, probably, they cut the screen was to get in the house, isn't it?
A: Yes, probably.
Q: So you knew they were trying to get into the house?
A: Yes.
Q: And, so, you knew this while you were running to your car?
A: Yes.

 * * * * * *

Q: You knew, when they got in your car, they had tried to break into that house?
A: Yes, sir.
Q: And you knew, when you drove off, that they had tried to break into that house?
A: Yes, sir.
Q: But you drove them off anyway, didn't you?
A: Ye[s].

12. Article 77, Vernon's Ann.P.C., 1925 provided:

An accessory is one who, *knowing that an offense has been committed*, conceals the offender, or gives him any other aid in order that he may *evade an arrest* or trial or the execution of his sentence.

 * * * * * *

13. Section 38.05, supra, provides in relevant part:

(a) A person commits an offense if, *with intent to hinder the arrest*, prosecution, conviction, or punishment *of another* for an offense, he:
(1) harbors or conceals the other;
(2) *provides* or aids in providing *the other with any means of avoiding arrest* or effecting escape; . . . .

showing reasonable doubt of the sufficiency of the evidence to support the conviction." (Citations omitted).

According to appellant the two girls were already in the yard when he came looking for them and saw one of them cutting the window screen. DeLoach was the only witness who testified to seeing appellant and his two companions in Johnson's back yard where the screen was cut. He did not see appellant or the others enter the yard. DeLoach was alerted to their presence by his son, who had apparently observed them from a platform in DeLoach's backyard. DeLoach's son was not called to testify about what he saw in Johnson's backyard before he called his father. His testimony could have "cast additional light on the facts." The State did not call the son nor account for its failure to do so. For this additional reason, I concur in the judgment.

Before the court en banc.

## DISSENTING OPINION TO THE OVER-RULING OF STATE'S MOTION FOR LEAVE TO FILE MOTION FOR REHEARING

DOUGLAS, Judge.

On original submission, the panel held that the evidence was insufficient to support the conviction for attempted burglary of a habitation. The appellant and two girls were on the property without the consent of the owner. Appellant made a "cutting–like" motion across a window screen. The screen was cut. The majority upholds the panel opinion in holding that there was a reasonable hypothesis that appellant did not cut the screen and was not a party to the attempted burglary. In doing so, the majority gives credence to appellant's testimony.

The credibility of the witnesses is left to the jury. The jury saw and heard the witnesses. It should be remembered that the evidence is insufficient only if there is a reasonable hypothesis that an accused did not commit or was not a party to the offense. The test is not one that requires the State to disprove defense testimony. The test is not one that the State has to disprove any possibility that an accused is not guilty. Appellant testified that he was berating his women companions and ran his hand over the cut on the window screen that one of them had made. Is that a reasonable explanation? If he had not been involved, why was he pulling his hand in a cutting motion over the window?

Let us look at the evidence in the light most favorable to the verdict as we must. The jurors had the right to accept any of the defensive testimony and reject any part it did not believe.

Bob H. Johnson, the owner of the home, testified that he did not give appellant or either of his two companions, who were seen on the property, permission to go into the enclosed back yard or to enter his home. Before Johnson left his home to go on a trip, the screens on his house were about four months old and were not damaged. Before leaving on the trip, Johnson asked his neighbor, Tom DeLoach, to keep watch on his house.

Tom DeLoach, the neighbor, testified that he had a small son who was in a fort where he could see into the Johnsons' back yard. The son and one of his friends asked DeLoach to come into the fort. He climbed up into the fort and saw one male and two female Mexican Americans in the Johnsons' back yard and related, ". . . Well, I saw the male making a cutting-type motion on Bob Johnson's kitchen window, while the two females were standing about five yards away watching him."

DeLoach got down from the fort and ran into Johnson's back yard. The two girls met him about five yards from the gate. He asked the three, "Are you trying to break into that house?" The man started running first and the girls broke and ran. The man got into the car which was about a half block away. He started the engine and waited for the girls. DeLoach got the license number of their car. He asked his

wife to call the police. Within less than ten minutes, the three were apprehended in the car in which they had fled.

Shortly thereafter, DeLoach and an officer went into Johnson's back yard and observed "... a gash ten to twelve inches cut across the top of the window." The gash was in the same window where appellant had been standing and the gash was in the same place he thought it should have been from *appellant's actions.*

Appellant testified that he was forty-eight years of age. He related that at about 4:00 or 4:30 p. m., he took Hope Madrid and Vivian Valdez to look for housecleaning work. He stopped his car at one house and they got out, then returned saying that it was the wrong address. He drove them where they wanted to go. He stopped the car; the girls got out and walked about a block away. After about ten or fifteen minutes, he went to check on them. He related: "I found Vivian and Hope standing next to that left-hand side window there of the house and Vivian had a knife." When he got there she had a knife in her hand cutting the screen up at the top, and "I told her to quit it, that she could get us in trouble", and he went "... up close to that window ... and felt it with my fingers to see if it was cut, and sure enough, it was cut into." "And I told them: 'Well, let's get out of here because you did wrong, and we are going to get in trouble.'" He went out the back gate and he saw them talking to "this man" and "I kept on walking to my car." The girls told him to run. He knew that they had done wrong and he started running, got in the car and waited until they had got there and then the three left.

On cross-examination, he testified that the girls who were with him were seventeen or eighteen years of age. He stayed in the back yard some four or five minutes. The man who came in the yard said to appellant, " 'You cut that screen' because he seen me where I was holding it looking at the screen." Appellant said he got excited

and ran. He knew that the girls were trying to get into the house when they left. He related that a ten-inch cut on the screen was easy to see but later said that he had to run his hand over it to see if it had been cut.

Hope Madrid, who was called by appellant, testified that she was eighteen years of age. She was with appellant on the day in question at the house, and when they were arrested. She related that she and Vivian went to the front door of the house and knocked. When no one answered, the two girls went to the back of the house where Vivian pulled out a knife and cut the screen. Appellant then came back there and the man came up and all of them started running. Vivian threw the knife away. She related that they did not tell appellant what they were going to do.

The majority holds that there was a reasonable hypothesis that appellant was not a party to the attempted burglary. The corpus delicti of the crime was proved by the testimony of Johnson and DeLoach. The crime was again proved by Hope Madrid and also by appellant. The appellant's connection with the crime was proved.

This Court has held the evidence to be sufficient in many cases when the proof showed that the accused was the driver of a getaway car. For example, see *Gerzin v. State,* 447 S.W.2d 925 (Tex.Cr.App.1969), cert. denied 398 U.S. 912, 90 S.Ct. 1710, 26 L.Ed.2d 73, and *Davila v. State,* 388 S.W.2d 944 (Tex.Cr.App.1965).

In the present case, the proof is undisputed that appellant was the driver of the getaway car. In addition, he was on Johnson's property without consent. He could easily see the cut on the screen. He testified to the unlikely story that he ran his finger across the screen to see if it had been cut. According to his testimony, he saw that the screen was cut when he first arrived, and he stayed there some four or five minutes.

It is unlikely that appellant would run his finger across the screen and linger at the

place when he knew the girls were trying to break into the house if he were not involved.

In addition to the above testimony, appellant fled the scene. Flight is evidence of guilt. The only thing left was for the jury to reasonably deduct from the evidence that appellant cut the screen or was a party to the offense.

All of the physical facts show that he was a party to the offense. This is not a weak circumstantial evidence case. The only thing left for the jury to determine was the intent of appellant. Under such circumstances no charge of circumstantial evidence would be required. The court instructed the jury on the law of parties to an offense.

In *Hines v. State*, 458 S.W.2d 666 (Tex.Cr. App.1970), the Court held that where the defendant was within the enclosed yard of a man who did not know him, after midnight, with a hand on the door, and he fled when a light was turned on, there was sufficient evidence to support a jury finding of guilt.

The jury, which is presumed to have been twelve reasonable people, found that appellant's testimony and that of his witness was unreasonable. For this Court to hold that appellant's testimony was reasonable, it must substitute itself for the jury as the trier of the facts. This should not be done.

The motion for rehearing should be granted and the judgment should be affirmed.

DALLY and W. C. DAVIS, JJ., join in this dissent.