

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00224-CR

**GARY WAYNE ALEXANDER,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 54th District Court
### McLennan County, Texas
### Trial Court No. 2011-1951-C2

## MEMORANDUM OPINION

In one issue, appellant, Gary Wayne Alexander, challenges the sufficiency of the evidence supporting his conviction for unlawful possession of a controlled substance with intent to deliver in a drug-free zone, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112, 481.134 (West 2010 & Supp. 2012). We affirm.

## I.   BACKGROUND

On May 6, 2011, agents and officers of the Waco Police Department executed a search warrant on a house located at 705 Harlem.  Witnesses identified this house as a trap house, which was described as follows:

> A trap house is a house that they—that a drug dealer may try to set up to conduct business out of, drug business, have people come to and from the house. There's usually not that much furniture.  And they try not to have anything at the house that may have their name attached to it, like a water bill, rent, where somebody paid rent in their name.  There's usually not any cable television turned on.  Bare—bare minimum, bear [sic] furniture. They just don't want to be tied to it.

While searching the house, agents and officers discovered that the house did not have much furniture and that there was narcotics residue "here and there."  Further investigation of the house revealed a hole in the floor of a bathroom.  While shining a light through the hole in the floor, police discovered a clear package containing a white-rock substance.  Believing the package contained narcotics, police retrieved the package and tested it.  Field tests showed that the package contained 14.31 grams of cocaine. Officer Darrel Don Patterson noted that the package did not have any dust on it, implying that it had recently been placed in the crawl space of the house.  Officer Patterson also recounted that both a plate and a Pyrex measuring cup in the house tested positive for cocaine.  Scales, baggies, razor blades, and two guns were found inside the house and inside the cars parked at the house.  Officer Patterson also remembered that photographs, a video camera, and a videotape were seized from the house.

Witnesses testified that appellant was found inside the house while the search warrant was being executed. Officer Michael Bucher stated that he observed appellant running into the living room of the house from a hallway when law enforcement entered the house.[1] In any event, Officer Patterson noted that appellant had $388 dollars in cash on his person at the time of his arrest.

Officers also found photographs contained in a sleeve accompanied by a receipt listing appellant's name. Many of the photographs depicted the house at 705 Harlem, and in several photographs, appellant was inside the house. Officer Jason Barnum testified that, in one of the photographs, appellant appeared to be sitting in a chair "holding a wad of money next to a plate of crack," though he later admitted that the photograph could have depicted appellant's brother, Ulis. In another photograph, Officer Barnum identified appellant as wearing a gold medallion necklace with a t-shirt stating, "Married to the Game." Officer Barnum explained that the expression, "Married to the Game," is common slang for selling drugs.

Patrol Sergeant John Allovio described the videotape that was seized from the house. According to Sergeant Allovio, the videotape depicted a drug deal transpiring at the house at 705 Harlem. At some point during the video, a guy states "Gary Wayne" or "G Wayne ain't told me that" regarding how to conduct a drug deal. Sergeant Allovio testified this statement referenced appellant. Apparently, appellant was the videographer of the drug deal based on Sergeant Allovio's identification of appellant

---

[1] According to Officer Bucher, when appellant saw law enforcement enter the house, he ran and fell over on a couch.

holding a video camera from a reflection on a car. Sergeant Allovio also testified that appellant's name was called out several other times during the video. And finally, Sergeant Allovio stated that several cell phones were found at the house and that multiple cell phones and firearms are typically used in drug dealing.

At the conclusion of the evidence, the jury found appellant guilty of the charged offense. Appellant pleaded true to an enhancement paragraph contained in the indictment that referred to his prior conviction for aggravated assault with a deadly weapon on November 22, 2004. The jury subsequently assessed punishment at forty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice with a $10,000 fine. This appeal followed.

## II. STANDARD OF REVIEW

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A person commits an offense if he knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a). Cocaine is a controlled substance listed in Penalty Group 1. *Id.* § 481.102(3)(D) (West 2010). Section 481.112 of the health and safety code further provides that an offense under 481.112(a) is a felony of the first degree if the amount of the controlled substance to which the

offense applies is, by aggregate weight, including adulterants and dilutants, four grams or more but less than 200 grams.[2] *Id.* § 481.112(d).

## III. ANALYSIS

In his sole issue, appellant contends that the evidence is insufficient to establish that he was directly involved in or a party to the possession or distribution of a controlled substance.

## A. Applicable Law

To prove unlawful possession of a controlled substance with intent to deliver, the State was required to prove, beyond a reasonable doubt, that appellant: (1) exercised custody, control, management, or care over the substance; (2) intended to deliver the controlled substance to another; and (3) knew that the matter possessed was contraband. *See id.* § 481.112(a); *see also Cadoree v. State*, 331 S.W.3d 514, 524 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005). The affirmative links rule is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. *Id.*

---

[2] The fact that appellant was convicted of charged offense in a drug-free zone only affected the corresponding punishment range. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(c) (West Supp. 2012) (providing that when an offense is committed in a designated drug-free zone, the minimum term of confinement is increased to ten years, and the maximum fine is increased to $20,000); *cf.* TEX. PENAL CODE ANN. § 12.32 (West 2011) (stating that the punishment range for first-degree felonies is a term of imprisonment for five to ninety-nine years or life and a maximum fine of $10,000). Appellant does not challenge this aspect of his conviction.

at 406. When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Id.* The affirmative link may be shown by direct or circumstantial evidence, but in either case, it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. *Id.* Furthermore, intent to deliver can be proven by circumstantial evidence, including the nature of the area where the accused was arrested, the quantity of drugs he possessed when he was arrested, and the manner in which the drugs were packaged. *See Kibble v. State*, 340 S.W.3d 14, 18-19 (Tex. App.— Houston [1st Dist.] 2010, pet. ref'd).

A link between the accused and the contraband may be established by the following non-exclusive list of factors: (1) the contraband was in plain view; (2) the accused owned the premises or had the right to possess the place where the contraband was found; (3) the accused had a large amount of cash when found; (4) the accused's access to the contraband; (5) the accused's close proximity to the contraband; (6) there was a strong residual odor of the contraband; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was present on the accused or in plain view; (9) the accused was under the influence of narcotics when arrested; (10) the accused's conduct indicated a consciousness of guilt; (11) the accused attempted to escape or flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) conflicting statements about relevant

matters were made by the occupants; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *See Lopez v. State*, 267 S.W.3d 85, 92 (Tex. App.—Corpus Christi 2008, no pet.) (citing *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex. App.—Corpus Christi 2002, no pet.)); *see also Crenshaw v. State*, No. 10-11-00244-CR, 2012 Tex. App. LEXIS 8909, at **7-8 (Tex. App.—Waco Oct. 25, 2012, no pet.) (mem. op., not designated for publication). The sufficiency of the links is not based on the number of factors established, but on the logical force of all the circumstantial and direct evidence. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006); *see Lopez*, 267 S.W.3d at 92.

Further, according to the law of parties, each party to an offense may be charged with the commission of the offense. TEX. PENAL CODE ANN. § 7.01(b) (West 2011). A person is a party to an offense if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2) (West 2011). When a party is not the "primary actor," the State must prove conduct constituting an offense plus an act by the defendant alone with the intent to promote or assist such conduct. *Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). Evidence may be deemed sufficient to sustain a conviction under the law of parties if the evidence shows that the defendant was physically present at the commission of the offense and encouraged the commission of the offense either by words or other agreement. *Miller v. State*, 83 S.W.3d 308, 313-14 (Tex. App.—Austin 2002, pet. ref'd) (citing *Urtado v. State*, 605 S.W.2d 907, 911 (Tex.

Crim. App. 1980); *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex. Crim. App. 1978)). Circumstantial evidence may suffice to show that one is a party to the offense. *Id*. (citing *Wygal v. State*, 555 S.W.2d 465, 469 (Tex. Crim. App. 1977)). While mere presence at the scene, or even flight, is not enough to sustain a conviction, such facts may be considered in determining whether an appellant was a party to the offense. *Id.* at 314 (citing *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1981) (op. on reh'g); *Guillory v. State*, 877 S.W.2d 71, 74 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd)).

**B.      Discussion**

Here, it is undisputed that appellant was found in the house where 14.31 grams of cocaine were found. In addition, the evidence establishes that scales, razor blades, guns, baggies, several cell phones, cocaine residue, and products used to make and distribute crack cocaine were found inside the house and cars parked at the house. *See Lopez*, 267 S.W.3d at 92; *Lassaint*, 79 S.W.3d at 740-41. Witnesses testified that these items are commonly used by drug dealers. Moreover, several witnesses identified the house as a trap house where drug transactions regularly occurred. In fact, witnesses testified that appellant's name was on the search warrant of the house based on constant police surveillance of the house and information from a confidential informant who had purchased drugs at the house many times. Appellant admits in his brief that the State proved that he was aware of illegal drug transactions transpiring at the house and that he recorded drug transactions on a video camera.

Officer Barnum testified regarding several photographs of appellant at the house. In one photograph, Officer Barnum noted that appellant appeared to be sitting in a

chair "holding a wad of money next to a plate of crack." In another photograph, appellant wore a t-shirt stating, "Married to the Game," which witnesses stated refers to selling drugs. Sergeant Allovio testified about the video that appellant created. According to Sergeant Allovio, appellant's name was referenced several times on the video about how to conduct a drug deal.[3] In one instance, an individual conducting the drug deal said "Gary Wayne" or "G Wayne ain't told me that"—a statement from which a reasonable factfinder could infer that appellant planned or aided and encouraged the drug deals occurring at the house. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *see also Urtado*, 605 S.W.2d at 911; *Tarpley*, 565 S.W.2d at 529; *Miller*, 83 S.W.3d at 314-15. Furthermore, when Officer Bucher entered the house, he observed appellant running from the hallway into the living room. *See Miller*, 83 S.W.3d at 314; *see also Valdez*, 623 S.W.2d at 321; *Guillory*, 877 S.W.2d at 74. Along the hallway was the bathroom where the cocaine was found in the crawl space underneath the house without any dust on the packaging. A reasonable factfinder could infer, based on appellant's location in the house and the fact that the package did not have any dust on it, that appellant hid the cocaine in the crawl space just prior to the execution of the search warrant.[4] *See Miller*, 83 S.W.3d at 314; *see also Valdez*, 623 S.W.2d at 321; *Guillory*, 877 S.W.2d at 74. And finally, when he was arrested, appellant had a large amount of

---

[3] Sergeant Allovio recounted that appellant's video documented disagreements between several individuals regarding how to keep a proper lookout during a drug deal and whether "bites" of crack cocaine would be sold.

[4] The record reflects that appellant was aware of the presence of law enforcement just prior to the execution of the search warrant. Officer Bucher stated that: "As I was getting out of the van, I looked at the house. I saw the blinds on this window, they started moving. I could see a black male with a white shirt. . . . They were looking out the blinds directly at us."

cash—$388—on his person, which was determined to be contraband and subsequently confiscated by police. *See Lopez*, 267 S.W.3d at 92; *Lassaint*, 79 S.W.3d at 740-41.

Viewing the evidence in the light most favorable to the verdict, and based on the logical force of all the circumstantial and direct evidence, we do not believe that the evidence demonstrates that appellant's contact with the cocaine in this case was merely fortuitous. *See Poindexter*, 153 S.W.3d at 405-06; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894. Applying the appropriate standards of review, we believe that a reasonable factfinder could determine, beyond a reasonable doubt, that appellant participated in the charged offense. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), 481.134; *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894. Accordingly, we conclude that the evidence is sufficient to support appellant's conviction. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894. As such, we overrule appellant's sole issue on appeal.

## IV. CONCLUSION

Having overruled appellant's sole issue on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed August 8, 2013
Do not publish
[CRPM]