

# IN THE
# TENTH COURT OF APPEALS

────────────────

## No. 10-19-00067-CR

**TODRIC MCDONALD,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

────────────────

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2014-1419-C1

────────────────

## MEMORANDUM OPINION

────────────────

In two issues, appellant, Todric Deon McDonald, challenges his conviction for

capital murder. *See* TEX. PENAL CODE ANN. § 19.03 (West Supp. 2019). Because we

overrule both of McDonald's issues, we affirm.[1]

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

### I. THE SELECTION OF AN ALTERNATE JUROR AND THE SEATING OF THE ALTERNATE ON THE JURY

In his first issue, McDonald contends that the trial court erred in seating venireperson number 44 as the alternate juror and ultimately as juror number 12 contrary to the provisions of article 35.15(d) of the Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 35.15(d) (West 2006).[2]

The record reflects that the trial court decided to seat an alternate juror in addition to the twelve jurors in this capital-murder in which the State did not seek the death penalty. The trial court determined that the alternate juror would be selected from the three members of the venire panel after the last juror had been seated as one of the twelve jurors. On appeal, McDonald asserts that the alternate juror should have been taken from the next three venirepersons after the "strike zone." This issue is of importance to McDonald because the morning before opening statements were made, a juror was excused for medical reasons and the alternate was seated as a juror.

---

[2] Article 35.15(d) of the Code of Criminal Procedure provides:

> The State and the defendant shall each be entitled to one peremptory challenge in addition to those otherwise allowed by law if one or two alternate jurors are to be impaneled and two peremptory challenges if three or four alternate jurors are to be impaneled. The additional peremptory challenges provided by this subsection may be used against an alternate juror only, and the other peremptory challenges allowed by law may not be used against the alternate juror.

TEX. CODE CRIM. PROC. ANN. art. 35.15(d) (West 2006).

However, the record shows that McDonald did not object to either the process for selecting the alternate juror or the seating of the alternate as a juror when another juror was excused for medical reasons. Nor did McDonald attempt to exercise a peremptory strike to the selection of the alternate or the seating of the alternate on the jury.

To preserve error for appellate review, a party must make a timely request, objection, or motion and state the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. *See* TEX. R. APP. P. 33.1(a)(1); *see also Smith v. State*, 907 S.W.2d 522, 530 n.6 (Tex. Crim. App. 1995) (noting that, under article 35.15(d), peremptory strikes for alternates and strikes for the main jury are totally separate and may not be used in lieu of each other and concluding that the issue technically was not preserved because "appellant had not actually run out of peremptories"). Because the record does not demonstrate that McDonald objected or attempted to exercise a peremptory strike to the selection of the alternate juror or the seating of the alternate as a juror, we cannot say that McDonald preserved anything for appellate review in this issue. *See* TEX. R. APP. P. 33.1(a)(1); *see also Smith*, 907 S.W.2d at 530 n.6. Accordingly, we overrule McDonald's first issue.

## II.    EXTRANEOUS-OFFENSE EVIDENCE

In his second issue, McDonald argues that the trial court abused its discretion by admitting extraneous-offense evidence that he had shot at individuals other than the

murder victims before the murders; that he had stolen a vehicle; and that he had evaded arrest or detention by using a motor vehicle. Specifically, McDonald asserts that the admitted extraneous-offense evidence did not satisfy the requirements for admission under Texas Rules of Evidence 403 and 404(b). *See* TEX. R. EVID. 403, 404(b).

## A. Standard of Review

We review the trial court's admission of extraneous-offense evidence for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A trial court's ruling on the admissibility of an extraneous offense is generally within this zone if the evidence shows that: (1) an extraneous transaction is relevant to a material, non-propensity issue; and (2) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *De La Paz*, 279 S.W.3d at 344. "Furthermore, if the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling." *Id.*

## B. Texas Rule of Evidence 404(b)

Texas Rule of Evidence 404(b) expressly provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant in order to show he acted in conformity therewith. TEX. R. EVID. 404(b). This rule codifies the common-

law principles that a defendant should be tried only for the offense for which he is charged and not for being a criminal generally. *See Rogers v. State*, 853 S.W.2d 29, 32 n.3 (Tex. Crim. App. 1993); *see also Segundo v. State*, 270 S.W.3d 79, 87 (Tex. Crim. App. 2008) (explaining that a defendant is generally to be tried only for the offense charged, not for any other crimes).

Extraneous-offense evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. TEX. R. EVID. 404(b). The list of examples in Rule 404(b) is not exhaustive. *See Prible*, 175 S.W.3d at 731. For example, extraneous-offense evidence may be admissible to demonstrate conduct by a defendant that indicates a consciousness of guilt. *See Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no pet.); *see also Urtado v. State*, 605 S.W.2d 907, 915 (Tex. Crim. App. 1980). An extraneous offense may also be admissible to show identity when identity is at issue in the case, or when the defense cross examines witnesses or alleges that someone else committed the crime. *See Page v. State*, 213 S.W.3d 332, 336 (Tex. Crim. App. 2006); *Lane v. State*, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996).

"Whether extraneous[-]offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). The trial court's Rule 404(b) ruling admitting evidence is generally within the zone of reasonable disagreement "if there is evidence

supporting that an extraneous transaction is relevant to a material, non-propensity issue." *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011).

In the instant case, the State proffered the testimony of two eyewitnesses—Ruby Murray and Lisa Muniz—to the shootings of Justin and Ulyssess Gonzales. However, during cross-examination, defense counsel established that both Murray and Muniz were using methamphetamine at the time of the shootings and argued that both were high and unreliable in identifying McDonald as being involved in the shooting. The State also proffered the testimony of Melissa Moore, who helped McDonald hide out after the shootings and helped him hide the vehicle he was driving, which was a blue GMC Yukon that he had stolen from Demontrae Williams at Hap's Icehouse in Waco, Texas. Moore also told police that McDonald admitted to killing two people as he ran out of Moore's house when he saw a news report on the shootings. At trial, defense counsel sought to discredit Moore's testimony by asserting that Moore is a "meth head" and that she is lying and basing her testimony on hearsay. Defense counsel's cross-examination, as well as arguments made at trial, put identity at issue. As stated above, extraneous-offense evidence may be admissible to show identity when identity is at issue in the case, as it was here. *See Page*, 213 S.W.3d at 336; *see also Lane*, 933 S.W.2d at 519.

To rebut defense counsel's identity argument, the State presented evidence of shell casings from McDonald's gun that was used in the shooting of Justin and Ulyssess, as well as other crime scenes. The State's firearms expert, April Kendrick, matched these

casings to the weapon found in McDonald's possession when he was apprehended in an evading incident that transpired a few days after the shootings. The expert could also match that weapon with casings found at two other shootings, including when McDonald shot at Micah McNeill while stealing his gun and when McDonald shot at Williams while stealing Williams's blue GMC Yukon.

The State also presented evidence of the time frame of the shootings, as well as the extraneous offenses. The armed robbery that resulted in the theft of Williams's blue GMC Yukon occurred on the evening of May 10, 2014; the aggravated assault of McNeill occurred at 11:00 p.m. on May 12, 2014; and the shootings occurred at 4:00 a.m. on May 13, 2014. In other words, all of these events transpired within a short period of time and showed McDonald's plan, opportunity, and modus operandi.

Finally, evidence of the evading incident that occurred a few days after the shooting is indicative of a consciousness of guilt for which extraneous-offense evidence is also admissible. *See Urtado*, 605 S.W.2d at 915; *see also Torres*, 794 S.W.2d at 598. Therefore, given that the complained-of extraneous-offense evidence was admissible for a number of proper purposes, we conclude that the evidence was relevant for more than just character conformity. *See* TEX. R. EVID. 404(b).

## C. Texas Rule of Evidence 403

Next, we address McDonald's Rule 403 argument. Evidence, though relevant, can nonetheless be excluded when its probative value is substantially outweighed by the

danger of unfair prejudice. *See id.* at R. 403. Once a trial court determines that extraneous-offense evidence is admissible under Rule 404(b), the trial court must, on proper objection by the opponent of the evidence, weigh the probative value of the evidence against its potential for unfair prejudice. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991); *see* TEX. R. EVID. 403. Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than unfairly prejudicial. *Montgomery*, 810 S.W.2d at 389. Unfair prejudice does not mean the evidence injures the opponent's case—"the central point of offering evidence." *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). "Rather[,] it refers to 'an undue tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Id.* (quoting *Cohn v. State*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993)).

Although not limited to the following enumerated factors, courts should balance the following under a Rule 403 analysis: (1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Prible*, 175 S.W.3d at 733. The trial court is presumed to have conducted a proper balancing test if it overrules a 403 objection, regardless of whether it conducted the test on the record. *See Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1995).

As stated earlier, McDonald challenged the identity element by attacking the reliability of the testimony of eyewitnesses Murray and Muniz based on their drug use at

the time of the shootings. The State had a need for the complained-of extraneous-offense evidence because it was probative on the issue of identity, and because it rebutted McDonald's defensive theory. *See Moses*, 105 S.W.3d at 626 (noting that rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted); *see also Daggett v. State*, 187 S.W.3d 444, 453-54 (Tex. Crim. App. 2005) (stating that extraneous offenses are admissible to rebut theories raised by testimony of a defense witness during direct examination or a State's witness during cross-examination). The record does show that some time was spent on developing the complained-of extraneous-offense evidence. However, there is nothing in the record demonstrating that this evidence impressed the jury in some irrational, yet indelible, way. In other words, we cannot say that the extraneous-offense evidence confused, distracted, or caused the jury to give the evidence undue weight.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the complained-of extraneous-offense evidence and its probative value. *See id.*; *see also Conner*, 67 S.W.3d at 202. Thus, we cannot conclude that the trial court abused its discretion by admitting this evidence over McDonald's Rule 403 and 404(b) objections. *See* TEX. R. EVID. 403, 404(b);

*see also De La Paz*, 279 S.W.3d at 343; *Prible*, 175 S.W.3d at 731.  We overrule McDonald's second issue.

### III.    CONCLUSION

Having overruled both of McDonald's issues on appeal, we affirm the judgment of the trial court.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Neill
Affirmed
Opinion delivered and filed January 8, 2020
Do not publish
[CRPM]

