**Robert John MUGGLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44407.**

Court of Criminal Appeals of Texas.

Dec. 14, 1971.

Henry J. McCluskey, Jr., Dallas, for appellant.

Jim D. Vollers, State's Atty., Austin, for the State.

Chavez & Barnard, Harlingen, for appellant.

F. T. Graham, Jr., Dist. Atty., Menton Murray, Jr., Asst. Dist. Atty., Brownsville, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for the possession of marihuana where the punishment was assessed at 2 years. The imposition of sentence was suspended and the appellant placed on probation. Trial was before the court without the intervention of a jury upon a plea of not guilty.

In two grounds of error appellant complains of the court's refusal to sustain his motion to suppress evidence for the reason that the informer who allegedly gave information leading to the arrest was not shown to be reliable, and that the court erred in admitting into evidence the marihuana taken from him "for the reason that the arrest of the appellant and his co-defendants was without probable cause."

Crispin Trevino, a Harlingen police plain clothes detective, testified that on April 14, 1970, he received information from an informant, a narcotic user, who had on two previous occasions given reliable information leading to the discovery of marihuana. The unidentified informant told Trevino that one Robert Cronin was dealing in marihuana and would meet friends in Pendleton Park and at Creasy's Bowling Lanes "to make a transaction and pass marihuana to his friends and use it"; that Cronin would then drive around town and to its outskirts with his friends using marihuana in a small car with the windows rolled up to achieve the maximum effect from the smoke. The informer stated he knew this as a matter of personal knowledge as he had been with Cronin on such occasions. The informer also stated Cronin would be in the park "on Fridays and week-ends."

Trevino knew Cronin and knew he had been arrested "for being drugged up on amphetamines" and had observed him "pass out on and off" for two days at the police station and jail.

Four days after the informer's tip on Saturday, April 18, 1970, Trevino and Officer Salazar went to Pendleton Park in the early afternoon and began a surveillance. About 2:15 p. m. they observed Cronin and others in a small blue Volkswagen enter the park and stop alongside a green Plymouth automobile known to belong to Richard Nagy. From their positions the officers were unable to hear any conversations or to see if any objects were exchanged. These cars then left the park. The officers followed in their vehicle and observed both cars parked at the residence of Ricky Schwab whom Tevino had once arrested for marihuana possession. The officers drove past attempting to avoid detection. When contact was re-established both vehicles were moving again, but shortly thereafter the Plymouth stopped at the Creasy's Bowling Lanes and the officers lost contact with the Volkswagen when it made a U-turn. A little later the officers found the Volkswagen parked at the bowling lanes. The officers again trailed the Plymouth but upon losing contact returned to the park. Shortly thereafter they observed Cronin driving past in his Volks-

wagen. Several other persons were in the car and at the time it appeared to the officers that "some may have been girls"—at least the hair was long.

The officers followed the car onto the expressway observing that the window was up on the driver's side. The officers knew that the back windows in the Volkswagen were fixed in place. From the distance at which they followed it does not appear the officers were able to observe the condition of the right front window on the passenger side of the vehicle. As the car took an exit off the expressway Trevino determined that from "the activities of the vehicle and the occupants" there was probable cause to believe they had marihuana in their possession.

He radioed for a uniform patrolman to stop the Cronin car. Officer Archer did just that. Cronin was asked to step out of the car. Not knowing why he had been asked to stop Cronin's car, Archer returned to his patrol vehicle's radio to inquire just as Trevino and Salazar arrived.

Trevino related that as he approached the Cronin car he smelled marihuana smoke. Thereupon he asked the appellant who was sitting in the right front seat to get out of the car and show him some identification. Appellant got out of the car and produced identification. At this point Trevino observed Richard Nagy, an occupant of the Cronin car, attempt to hide something in his sock and asked him to get out of the car which he did. When Trevino started to check the sock, Nagy pulled out a cigarette, threw it toward the appellant saying "Eat this." Nagy then started to run. The appellant tried to retrieve the cigarette thrown to him by Nagy but was restrained by Officer Salazar. A hand rolled cigarette was recovered from the ground. During this time it appears Place and Lofton, other occupants of the car, fled. Place was apprehended.

At the police station Salazar was searching the appellant at the time of booking when the appellant pulled "something from his waist" and put it in his mouth. A struggle ensued between Salazar, Patrolman Archer and the appellant and the appellant was caused to spit out a green looking substance.

Also at the police station a search of Cronin's person revealed "a baggie" containing a substance Trevino believed to be marihuana.

The substance found on Cronin, the hand rolled cigarette thrown by Nagy, and the substance spit out by the appellant were all forwarded to the Department of Public Safety. The chain of custody being established, the chemist testified that all three items contained marihuana. They were introduced over the objection that they were the fruits of illegal arrest, search and seizure.

Appellant did not testify nor offer any witness on the issue of guilt. His father did testify in support of his motion for probation.

It is true that Patrolman Archer did not himself possess probable cause for the arrest. He had the right, however, to act upon the basis of the radio broadcast and was entitled to assume the officer requesting the arrest had sufficient probable cause to justify the arrest. Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306; Weeks v. State, Tex.Cr.App., 417 S.W.2d 716, cert. den. 389 U.S. 996, 88 S.Ct. 500, 19 L.Ed.2d 494; Brown v. State, 443 S.W. 2d 261 (Tex.Cr.App.1969). "Where, however, the contrary turns out to be true, an otherwise illegal arrest cannot be insulated from challenge by the decision of the instigating officer to rely on fellow officers to make the arrest." Whiteley v. Warden, Wyoming State Penitentiary, supra.

Did, then, Officer Trevino have sufficient probable cause to justify the arrest? Knowing Cronin and his past association with dangerous drugs, Trevino received information concerning him from a previously reliable informer who purported

to speak from personal knowledge as to the possession of marihuana by Cronin and his friends. There were certainly underlying circumstances to show that the informer was reliable, see Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Hernandez v. State, Tex.Cr.App., 435 S.W.2d 520, cert. den. 396 U.S. 866, 90 S.Ct. 112, 24 L.Ed.2d 120, and to show that the informer knew the narcotics were where he said they would be. Cf. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

Acting upon the information received Trevino set up a surveillance, and at the time he requested the police radio broadcast almost every fact except the presence of marihuana was verified. Gonzales v. State, 467 S.W.2d 454 (Tex.Cr.App.1971).

As in Almendarez v. State, 460 S.W.2d 921 (Tex.Cr.App.1970), it would appear that this case is controlled by Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327. See also United States v. Acosta, 411 F.2d 627 (5 Cir. 1969); Gonzales v. State, supra.

Hereford, the Government's informer in the Draper case, did not state the way in which he had obtained his information. He reported, however, that Draper had gone to Chicago the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings. Hereford described with some particularity the clothes Draper would be wearing upon his return to Denver. The police upon meeting the inbound Denver train on the second morning specified by the informer Hereford saw a man whose dress corresponded precisely to Hereford's detailed description. It was then apparent that Hereford had not been fabricating his report out of the whole cloth and that all but the critical fact with respect to the possession of narcotics had been verified. The search which followed Draper's arrest was upheld.

We conclude that Officer Trevino had probable cause to request the warrantless arrest via the police radio broadcast. Almendarez v. State, supra. Nevertheless, the appellant argues that even if there was probable cause to arrest Cronin there was no probable cause to arrest appellant. He contends the officers had no prior information concerning him and that he was not seen committing any offense.

Since there was probable cause to arrest Cronin, it is noted that when Trevino, an officer with six years' experience and training in narcotic detection, approached the Cronin car he smelled marihuana smoke. At his point he asked the appellant for identification.

Article 2.24, Vernon's Ann.C.C.P., provides:

"Whenever a peace officer has reasonable grounds to believe that a crime has been committed, he may stop any person whom he reasonably believes was present and may demand of him his name and address. If such person fails or refuses to identify himself to the satisfaction of the officer, he may take the person forthwith before a magistrate. If the person fails to identify himself to the satisfaction of the magistrate, the latter may require him to furnish bond or may commit him to jail until he so identifies himself."

It was during this process Trevino observed Nagy's actions which eventually resulted in Nagy throwing a cigarette to the appellant and appellant's efforts to retrieve it.

In Byrd v. State, 447 S.W.2d 936 (Tex.Cr.App.1969), it was held that if a person is stopped under circumstances presenting reasonable grounds for believing that a crime has been committed and he was present and during such time the officer acquires probable cause to arrest for some offense, he may arrest and then incident to such arrest conduct a search for physical evidence. As noted in Baity v. State, Tex.Cr.App., 455 S.W.2d 305, circumstances short of probable cause for arrest may

justify temporary detention for investigation and questioning.

We conclude that under the circumstances presented appellant's arrest was valid as well as the subsequent search. Neither contention presents merit.

The judgment is affirmed.