**Wesley TARPLEY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54343.**

Court of Criminal Appeals of Texas, Panel No. 1.

May 10, 1978.

Stan Brown, Jim Ahlstrand, on appeal only, Abilene, for appellant.

Lynn Ingalsbe, Dist. Atty., and James H. Smart, Jr., Asst. Dist. Atty., Abilene, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of credit card abuse. Punishment was assessed by the jury at eight years.

Appellant contends (1) that the evidence is insufficient to support his conviction; (2) that evidence introduced was obtained as a result of an unlawful arrest and search; (3) that the prosecutor commented on his failure to testify, and (4) that he was denied an examining trial and counsel at arraignment. We overrule these contentions and affirm.

Appellant contends that the evidence is insufficient to show that he solicited, encouraged, directed or aided his co-defendant in such a way as to make him a party to the offense.

On January 27, 1976, appellant and his co-defendant, John Wayne Hudson, entered the Sun Valley Motor Lodge in Abilene. There, Hudson rented hotel room number nine from Mrs. Emmett Martin, co-proprietor of the Lodge. In payment for the room, he presented a BankAmericard credit card in the name of J. M. Gassiot. Emmett Martin testified that, although he could not be positive, appellant looked like the man who accompanied John Hudson into the Sun Valley Lodge.

The next morning Emmett Martin observed that the car license number noted on John Hudson's room registration card did not match the license number of the car parked in the space reserved for room nine. Martin called BankAmericard security in Forth Worth and was informed that the credit card used by Hudson was stolen. BankAmericard Security notified the Abilene Police Department.

Abilene Police Detective Jack Dieken testified that after receiving a call from BankAmericard Security in Fort Worth he and a patrolman proceeded to room number nine at the Sun Valley Lodge. John Hudson opened the door and admitted the officer. Appellant emerged from the bathroom area and both men were placed under arrest. A search produced a brown leather wallet containing a BankAmericard and numerous other credit cards and receipts belonging to Imported Auto Parts Corporation and bearing the name of Jimmie Gassiot. Also found were fifty checks belonging to Imported Auto Center of Fort Worth. Among these were checks drawn to the order of Jimmie Gassiot in varying amounts. The number of the BankAmericard found in room number nine matched the number of the card used by John Hudson to pay for overnight lodging in the complainants' establishment. The key to room nine had been removed from its plastic tag and was found on appellant's key ring. Also found in room nine was a lockbox belonging to appellant which contained personal papers bearing the name of Wesley Joe Tarpley, a .32 caliber pistol and shells, and a BankAmericard in the name of Overseas Imported Auto Parts and bearing the signature of James L. Adams. Also found in appellant's lockbox were 73 blank checks belonging to "Overseas Imported Auto Parts" and "Imported Auto Center" of Fort Worth, several credit cards marked Overseas Imported Auto Parts, a Social Security card bearing the name James L. Adams, and a Selective Service card belonging to James M. Gassiot.

Jimmie Gassiot testified that he was employed as a travelling salesman for Imported Auto Center in Fort Worth, a division of

Imported Overseas Auto Parts, and that numerous credit cards had been issued to him in this capacity. He further testified that in mid-December, 1975, a burglary had been committed at Overseas Auto Parts in which numerous company checks and credit cards belonging to him and other employees were stolen. Gassiot stated that none of the signatures appearing on the receipts introduced into evidence were his and he had given no one authorization to use his credit cards or to sign his name.

■ The evidence was sufficient to support appellant's conviction. A defendant is guilty as a party (principal under the former penal code) where he (1) is physically present at the commission of the offense and (2) encourages the commission of the offense either by words or other agreement. *Baldridge v. State*, 543 S.W.2d 639 (Tex.Cr. App.1976); *Suff v. State*, 531 S.W.2d 814 (Tex.Cr.App.1976); *Bush v. State*, 506 S.W.2d 603 (Tex.Cr.App.1974). In determining whether one has participated as a party, the trial court may look to events occurring before, during and after the commission of the offense and reliance may be placed on actions of the parties which show an understanding and common design to do a certain act. *Ex parte Prior*, 540 S.W.2d 723 (Tex.Cr.App.1976); *Holloway v. State*, 525 S.W.2d 165 (Tex.Cr.App.1975); *Bush v. State*, supra.

■ Appellant argues that, because he himself did not rent room number nine from the complainant and because the stolen BankAmericard used to fraudulently obtain lodging was found in the co-defendant's luggage, there is no evidence connecting him with the instant offense. This argument is without merit. One may be guilty as a party whether he aided in the commission of the offense or not. *Prior v. State*, supra; *Bush v. State*, supra, citing *Middleton v. State*, 86 Tex.Cr.R. 307, 217 S.W.2d 1046 (1920); *Lombardo v. State*, 503 S.W.2d 780 (Tex.Cr.App.1974). Appellant's presence at the commission of the offense is undisputed. Moreover, the facts and circumstances surrounding the offense were sufficient to show that (1) appellant was in possession of stolen credit cards, (2) that he knew John Hudson to be in possession of one or more stolen credit cards obtained from the same source, and (3) that an agreement existed between them to utilize a stolen credit card to fraudulently obtain lodging at the Sun Valley Motor Lodge.

Tarpley asserts that the court erred in admitting into evidence fruits of the search incident to appellant's warrantless arrest. He contends that sufficient time existed for the arresting officer to procure an arrest warrant. Article 14.04 of the Code of Criminal Procedure provides that a peace officer may, without a warrant, pursue and arrest an accused where a credible person represents to such officer that a felony has been committed, that the offender is about to escape, and where there is, consequently, no time to procure a warrant.

■ In the present case, Detective Dieken had a right to rely upon BankAmericard Security officer Joe Bellew as a credible source of information. It is well established that an officer who does not himself possess probable cause for making a warrantless arrest may act upon the basis of information relayed to him by another officer requesting that an arrest be made. *Myre v. State*, 545 S.W.2d 820 (Tex.Cr.App. 1977); *Hooper v. State*, 516 S.W.2d 941 (Tex.Cr.App.1974); *Muggley v. State*, 473 S.W.2d 470 (Tex.Cr.App.1971); *Brown v. State*, 443 S.W.2d 261 (Tex.Cr.App.1969). The individual requesting arrest need not necessarily be a uniformed police officer. *See Weeks v. State*, 417 S.W.2d 716 (Tex.Cr. App.), *cert. denied* 389 U.S. 996, 88 S.Ct. 500, 19 L.Ed.2d 494 (1967), and *Boatright v. State*, 472 S.W.2d 765 (Tex.Cr.App.1971).

■ The test for probable cause for a warrantless arrest made on the strength of another's report is the information known to the person reporting. *Washington v. State*, 518 S.W.2d 240 (Tex.Cr.App.1975); *Hooper v. State*, supra; *Colston v. State*, 511 S.W.2d 10 (Tex.Cr.App.1974). If the requesting officer is in possession of sufficient knowledge to constitute probable cause, then he need not detail such knowl-

edge to the arresting officer. *Piper v. State*, 484 S.W.2d 776 (Tex.Cr.App.1972); *Branch v. State*, 447 S.W.2d 932 (Tex.Cr. App.), *cert. denied* 403 U.S. 952, 91 S.Ct. 2287, 29 L.Ed.2d 864, rev'd on other grounds, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1969).

■ BankAmericard Security officer Bellew possessed information constituting probable cause for appellant's warrantless arrest, whether or not every detail of such information was communicated to Detective Dieken. Bellew was informed by Emmett Martin that the license number of appellant and Hudson's car was not the same as it was purported to be on the hotel registration card. Martin further informed Bellew of the number of the credit card used by Hudson and appellant to obtain lodging. Bellew knew this to be the number of a credit card stolen in a Fort Worth burglary.

In *Harryman v. State*, 522 S.W.2d 512 (Tex.Cr.App.1975), officers were informed by a motel manager that a rifle removed from the defendant's room had been stolen in a Colorado burglary and that the license plates listed on the defendant's guest registration card were also stolen. The officers had probable cause to make a warrantless arrest. In *Skidmore v. State*, 530 S.W.2d 316 (Tex.Cr.App.1975), police information that the defendants were using a stolen credit card and automobile constituted probable cause for their warrantless arrest. Officer Bellew had probable cause to believe that the felony of credit card abuse had been committed, and Detective Dieken was justified in arresting appellant upon this information.

■ Appellant contends that there was no basis for the belief that he and the co-defendant were preparing to escape. Officer Dieken testified at the hearing on appellant's motion to suppress that Bellew had been informed by Emmett Martin that the two men were about to leave the motel. He further stated that the procurement of an arrest warrant would not only have required forty-five minutes to an hour, but that it would have been impossible to obtain

in view of the fact that appellant and his co-defendant's names were unknown to the police. Emmett Martin testified that appellant and Hudson did not appear for morning coffee in response to a 7:00 wake-up call, that he could not see their car from the hotel desk and that he feared that they had driven off. He communicated these fears to BankAmericard Security officer Bellew and arresting Officer Dieken.

■ Contrary to appellant's contention, the fact that he and Hudson were not in the act of escaping at the time of the arrest is immaterial. The record reflects that the two men were dressing when the arrest was made. Their luggage was partially packed and clothes had been removed from the closet and placed on one of the beds. There was no information which would have indicated to Officer Dieken that appellant and Hudson were planning to stay in the room long enough for him to procure a warrant. Officer Dieken had probable cause to believe that a felony had been committed and that the offenders were about to flee. The warrantless arrest was lawful.

Appellant also urges this Court to find that the search conducted pursuant to the arrest was unlawful as being beyond the scope of *Chimel v. California*, 395 U.S. 75, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). We decline to so hold.

At the hearing on appellant's motion to suppress, Detective Dieken testified that prior to his arrival at the Sun Valley Lodge he was contacted by Detective Charles Timmons of the Fort Worth Police Department. Detective Timmons, who had handled the burglary of Overseas Imported Auto Parts, informed Detective Dieken that a .12 gauge shotgun had been stolen in the burglary. He warned Dieken to be cautious because appellant and Hudson might be armed.

The record shows that upon his arrival at room number nine at the Sun Valley Lodge Officer Dieken exhibited his badge and identified himself to John Hudson who allowed him to enter the room. At that time, and prior to the conduct of any search, both appellant and Hudson were placed under

arrest. Incident to appellant's lawful arrest, the officer conducted a search of an open suitcase which lay on the bed within reach of both suspects. An examination of the back pouch of the suitcase revealed the brown leather wallet which contained the BankAmericard used by Hudson and appellant to fraudulently obtain lodging at complainant's hotel. The officers' search extended to farther than the area within the suspects' immediate reach. All other luggage and belongings were inventoried at the police station.

The search conducted in the present case is precisely the type of search which the United States Supreme Court approved in *Chimel v. California*, supra. The language of the Court's decision is now familiar:

"[I]t is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule . . . There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control.'"

*Accord Wood v. State*, 515 S.W.2d 300 (Tex. Cr.App.1974); *Wilson v. State*, 511 S.W.2d 531 (Tex.Cr.App.1974); *Sheldon v. State*, 510 S.W.2d 936 (Tex.Cr.App.1974); *Lewis v. State*, 502 S.W.2d 699 (Tex.Cr.App.1973).

■ Appellant argues that the arresting officer could not have been looking for a shotgun when he examined the back pouch in the top of the suitcase. Whether or not the officer was specifically searching for a shotgun is immaterial. Detective Dieken had been warned that appellant and Hudson might be armed, possibly with a shotgun. This in no way precluded the possibility that they possessed other weapons. The officer was entitled to search the entire area within appellant's reach for weapons or evidence whether or not a specific item searched was large enough to accommodate a shotgun.

■ Appellant further argues that the search exceeded the permissible scope of a search incident to an arrest inasmuch as the brown leather wallet and the credit cards within it were not in plain view of the arresting officer. In support of this argument, appellant relies upon the general discussion of the plain view doctrine contained in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

■ This argument is without merit. Evidence and weapons which may be seized without a warrant incident to lawful arrest under *Chimel* need not be in plain view. Indeed, it is the gravamen of *Chimel* that an arresting officer must be permitted to search the area within a suspect's immediate control not only for weapons and evidence which are in plain view but also for those which are hidden. Were the seizure of evidence or weapons incident to arrest limited to those items in plain view, the protective purpose of such a search would be completely defeated. In *Coolidge*, the Supreme Court of the United States pointed out that the plain view doctrine is not in conflict with the law of search incident to valid arrest expressed in *Chimel*, but is, rather, complementary and an adjunct to it. 403 U.S. at 465, footnote 24, 91 S.Ct. 2022.

■ Tarpley next contends that the court erred in admitting into evidence numerous checks and credit cards stolen from Overseas Imported Auto Parts, and credit receipts for the use of such stolen cards, on the grounds that such evidence tended to show inadmissible extraneous offenses. Such evidence was admissible to show appellant's guilty knowledge, intent, and system for utilizing such stolen credit cards and checks to fraudulently obtain property or services. *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App.1975); *Davis v. State*, 516 S.W.2d 157 (Tex.Cr.App.1974); *Barnes v. State*, 503 S.W.2d 267 (Tex.Cr.App.1974). This evidence was admissible as a circumstance surrounding the arrest or as referred to as a part of the res gestae of the arrest.

Appellant contends the trial court erred in denying his motion for mistrial after the following remarks were made by the district attorney during argument at the penalty stage of the trial:

"The Legislature has set the punishment range from two to ten years, and said look at the individual case involved. Look at the individual case. We're not dealing in this case with an eighteen year old first offender. We're dealing with a forty year old ex-con who carries a gun around with him, who, whether he burglarized the place in Fort Worth or not, I don't know, but he ended up with an awful lot of things that got stolen from it.

"He's shown no reason to me, and I don't think he's shown you any reason why he shouldn't be put away—"

Appellant's objection to the remark as a comment on his failure to testify was sustained and an instruction to disregard was given. If the prosecutor's remarks may be reasonably construed from the jury's standpoint as referring to appellant's failure to call another witness than himself, reversal is not called for. *Brown v. State,* 475 S.W.2d 761 (Tex.Cr.App.1971).

We further conclude that the prosecutor's argument could reasonably have been taken as a reference not to appellant's failure to testify but to his failure to present witnesses or evidence of any kind in his behalf. No reversible error is shown.

Tarpley asserts that the indictment against him should have been dismissed on the grounds that he was not afforded an examining trial nor appointed counsel prior to arraignment. He asserts that upon arrest he requested counsel and an examining trial and that these were denied him. Counsel was appointed at arraignment on February 20, 1976.

The record contains no evidence in support of appellant's claim. He did not testify at any time and there is no other evidence which shows that he either requested or was refused counsel or an examining trial. In *Gooden v. State,* 425 S.W.2d 645 (Tex.Cr.App.1968), this Court held that the failure to grant the defendant an examining trial was not an erroneous deprivation of effective assistance of counsel in view of the fact that (1) there was nothing in the record to indicate that the defendant had requested an examining trial, (2) the return of an indictment terminates the right to an examining trial, and (3) failure to grant an examining trial does not affect the indictment's validity.

Tarpley finally argues that the court erred in refusing his motion to dismiss the indictment on the grounds that the grand jury did not consider all available testimony prior to the return of the indictment.

There is no evidence supporting this claim. This Court will not go behind the actions of the grand jury to determine whether sufficient evidence existed to justify the return of an indictment. *Culley v. State,* 505 S.W.2d 567 (Tex.Cr.App.1974). Were we to accept appellant's claim that evidence was presented to the grand jury by the district attorney alone, such would not constitute reversible error. *Forbes v. State,* 513 S.W.2d 72 (Tex.Cr.App.1974). An indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for trial of the charge on the merits. *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

No error is shown. The judgment is affirmed.