cleveland v. state 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-430-CR





JASON D. CLEVELAND,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 0922487, HONORABLE JON N. WISSER, JUDGE PRESIDING



 




 Jason D. Cleveland appeals his convictions under sections 19.02 and 20.04 of the
Texas Penal Code for aggravated kidnapping and murder. See Tex. Penal Code Ann. §§ 19.02,
20.04 (West 1989). The jury found appellant guilty and assessed punishment of seventy-five years
for aggravated kidnapping and forty years for murder, with affirmative deadly weapon findings
in each. In ten points of error, appellant complains that (1) the trial court erred in admitting into
evidence certain statements his deceased friend made to that friend's wife concerning the
kidnapping and murder; (2) the evidence is insufficient to support the convictions and deadly
weapon findings; and (3) his trial counsel rendered ineffective assistance of counsel. We will
affirm the trial court's judgment.




BACKGROUND


 The following facts are undisputed. On December 2, 1989, appellant and his
friend, Michael Bailey, drove to a large house party near the campus at the University of Texas
at Austin. Bailey attempted to buy LSD (1) from various people but was unsuccessful. Bailey
approached Matthew Pyle at one point, but Pyle refused to help him. Later, Bailey purchased
what he thought was LSD from one of Pyle's friends, but it apparently was not. As the party was
ending, Pyle saw appellant and Bailey standing by a car, a brown Camaro, and asked them for
a ride home for himself and his friend, Rex Eckels, who had "passed out" from intoxication. 
Another friend of Pyle's, Sean Bauman, also asked for a ride. None of the three young men knew
appellant or Bailey before that night.

 Bailey agreed to drive them home. Pyle put Eckels into the car behind the driver's
seat, Bauman sat in the middle of the backseat, and Pyle sat directly behind the front passenger's
seat. Bailey drove and appellant sat in the front passenger seat. On the way home, Bailey
attempted to make a "deal" with Pyle to buy some LSD. When they stopped at Eckels' house,
Bailey drew a gun, placed it against Pyle's head, and threatened to kill his friends if Pyle did not
get him some acid. Bauman managed to escape, and Pyle ran to the backdoor of the residence
to try and find some acid or call the police, but no one would help him. When Pyle returned to
the front of the house, the Camaro and its occupants were gone.

 Pyle panicked and began running to his girlfriend's house; on the way, he found
a telephone and was able to call the police. Pyle later went to the Travis County Sheriff's Office
and made a formal statement about the evening's events.

 While patrolling Pace Bend Park by boat on the morning of December 3, 1989,
Deputy Sheriff Albert Vernon discovered Eckels' body lying face down between two large
boulders. Eckels had suffered a shotgun blast to the chest, a pellet wound to the face, and
numerous abrasions on the body which were inflicted post-mortem. Evidence at the scene
indicated Eckels had been dragged across the park and thrown from a cliff approximately forty-five feet above.

 On June 8, 1990, following a dispute with his wife Angela, Bailey committed
suicide by shooting himself in the head with a 30.30 rifle.

 In August of 1991, appellant made a written statement to the police regarding
Eckels' murder. In the statement, appellant recounted the drive to Pace Bend Park, asserted that
Bailey shot Eckels in the chest with the sawed-off shotgun, and described how they disposed of
the body. Appellant's statement was admitted at trial, and he does not challenge its admissibility.

 At trial, Angela testified, over objection, as to what Bailey told her about the night
of the murder. She stated that she was awakened on the morning of December 3 when her
husband and appellant returned home. They were talking about a "fight" they had been in and
were laughing and giggling. When Bailey came into the bedroom, she testified he told her the
following:


 

He said they picked up a bum because they had to take the bum to get the acid and
I guess they were driving him but he said that [appellant] was in the back seat with
him and [appellant] was back there with him and . . . my husband asked him what
he was doing and I guess the guy said something and [appellant] got nervous and
shot him. And then they ended up driving to Lake Travis and they had threw the
body over the cliff. It was a cliff and there was a rock where you jump off, jump
in the water and that's where they threw him off at.



(Emphasis added.) Angela testified that Bailey threatened that he and appellant would hurt her
if she ever told anyone what had happened.



DISCUSSION


 In points of error seven and eight, appellant challenges the sufficiency of the
evidence to support his convictions for aggravated kidnapping and murder. 

 The trial court charged the jury on the law of parties. (2) Accordingly, the jury did
not have to find that appellant shot Eckels in order to find him guilty of the offenses charged. 
Appellant contends that the evidence is insufficient to show that he participated in Eckels'
kidnapping and murder either alone or as a party.

 In reviewing the sufficiency of the evidence to support a conviction, an appellate
court must determine whether, after viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the essential elements of the crime beyond
a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Fuller v. State, 827 S.W.2d
919, 931 (Tex. Crim. App. 1992). The standard is the same for direct and circumstantial
evidence cases. Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim. App. 1991). All conflicts and
reasonable inferences are to be resolved in favor of the verdict. Kiser v. State, 788 S.W.2d 909,
913 (Tex. App.--Dallas 1990, pet. ref'd).

 "Evidence is sufficient to convict the defendant under the law of parties where he
is physically present at the commission of the offense, and encourages the commission of the
offense either by words or other agreement." Cordova v. State, 698 S.W.2d 107, 111 (Tex.
Crim. App. 1985) (citing Tarpley v. State, 565 S.W.2d 525 (Tex. Crim. App. 1978)); Kiser, 788
S.W.2d at 913 (citation omitted). In determining whether a defendant participated as a party, "the
court may look to events occurring before, during and after the commission of the offense, and
may rely on actions of the defendant which show an understanding and common design to do the
prohibited act." Cordova, 698 S.W.2d at 111 (citations omitted). Circumstantial evidence may
be offered to show that one participated as a party to an offense. Id. A person may be guilty as
a party even when he did not aid in committing the offense. Tarpley, 565 S.W.2d at 529
(citations omitted); Snow v. State, 721 S.W.2d 943, 948 (Tex. App.--Houston [1st Dist.] 1986,
no pet.) Although mere presence at the crime scene is not enough to show guilt, "it is a
circumstance that, when combined with other facts, may suffice to show participation by
agreement." Snow, 721 S.W.2d at 948 (citations omitted). Finally, at least one Texas court of
appeals has held that an "intent to promote and assist in the commission of the offense may be
inferred from the acts proved." Martinez v. State, 736 S.W.2d 233, 235 (Tex. App.--Corpus
Christi 1987), pet dism'd as improvidently granted, 810 S.W.2d 405 (Tex. Crim. App. 1991).

 The State introduced appellant's confession at trial, in which appellant describes
the events of December 2, 1989. In his statement, appellant essentially corroborates the
incriminating evidence introduced at trial, except for who did the actual shooting. Appellant
explains how he and Bailey wanted to buy some "acid" and went to a party near the University
of Texas campus. They were in Angela's brown Camaro. Bailey bought some acid. They
decided to leave the party and give "three guys" a ride home. Bailey drove and appellant was the
front passenger. They stopped at a house and Bailey pulled a pellet gun (3) and told one of the guys
to go get some acid and come back, and that he and appellant would stay with the other guy until
he came back. Bailey "got tired of waiting and took off." Appellant and Bailey argued over the
pellet gun and appellant took it away from Bailey. Appellant admitted he shot the guy in the
backseat in the face, telling him it was only a pellet gun. Appellant then rode in the backseat,
talking to the victim. They drove to Pace Bend Park and parked at one of the cliffs. Bailey was
angry because he did not get any drugs, and so he shot the victim one time in the chest with the
sawed-off shotgun. Bailey and appellant then carried the dead body over to the cliff and threw
it off. They drove back to Bailey's house and spent the night there. Appellant admitted, "I know
what we had done was wrong." Appellant did not reveal this information until he was contacted
by law enforcement officials, about twenty months after the murder and fourteen months after
Bailey's death.

 Bauman testified about the events of December 2, 1989. He made an in-court
identification of appellant and Bailey (through a photograph) as the passenger and driver of the
Camaro, respectively, on the night in question. He testified that they had agreed to give him a
ride home after a party near the UT campus and that, during the ride, he thought from the
conversation that Bailey and Pyle were making a drug deal. After they stopped, Bailey pulled a
shotgun on Pyle and threatened to kill him if he "ripped them off." Bauman testified that
appellant "sort of agreed with whatever the driver said" and that appellant had a small pistol in
his lap. Bauman then testified as to how he escaped because he feared he would be killed. 

 Pyle testified that on the night in question, appellant and Bailey approached him
at the party to inquire about buying some LSD. Pyle had never met them before and refused to
help them. He testified that after the party he asked appellant and Bailey to take him home, along
with Eckels, and that Bauman asked for a ride as well. In his statement introduced at trial, Pyle
described the car as a two-door, brown and beige, mid to late 1970's model Camaro. (4) He testified
that, after they stopped, the driver pulled a shotgun on him and threatened to kill his friends if he
did not get them some acid. Bauman escaped. Then the driver handed the shotgun to the
passenger and pulled out a pistol. (5) Pyle then testified that appellant and Bailey held Eckels at
gunpoint while he got out of the car to attempt to get some acid. He stated that as he was getting
out of the car, the driver and passenger each were pointing a gun at Eckels, the driver holding the
pistol and the passenger holding the shotgun. After he unsuccessfully attempted to get some acid
from the people inside the house, he returned to the front of the house to find the car gone and
no sign of Eckels. Pyle made an in-court identification of appellant as the driver, then later
changed his testimony to state that appellant was, in fact, the passenger. (6)

 As earlier described, Angela testified that when her husband and appellant returned
home that evening, they were laughing about the "fight" they had been in. She understood that
they had picked up "a bum" to get some acid and that appellant rode in the back with the bum and
then got nervous and shot him, after which they dumped his body off a cliff. Viewing the
evidence in the light most favorable to the verdict, we conclude there was sufficient evidence for
the jury to find the essential elements of the offenses beyond a reasonable doubt. Points of error
seven and eight are overruled. 

 In his ninth point of error, appellant complains that the evidence is insufficient to
support the jury's findings that he used or exhibited a deadly weapon in the commission of the
charged offenses. 

 During trial, Deputy Sheriff Gary Cutler testified that a pellet gun can be a deadly
weapon. Dr. Robert Bayardo, chief medical examiner for Travis County, also testified that a
pellet gun could inflict serious bodily injury or death. In its charge to the jury at the guilt-innocence stage of trial, the court submitted a special issue on use of a deadly weapon as to each
offense. The deadly weapon alleged in each special issue was a pellet gun. The jury returned
affirmative findings of use of a deadly weapon in the commission of aggravated kidnapping and
murder.

 Appellant is not denying that he used a pellet gun to shoot Eckels in the face, nor
is he contending that a pellet gun is not a deadly weapon. (7) Instead, appellant contends that Bailey
was the only one who used a deadly weapon in the commission of the offenses, and that
appellant's shooting of Eckels in the face with a pellet gun was a separate act not connected with
the kidnapping and murder of Eckels. Appellant further contends, relying on Travelstead v. State,
693 S.W.2d 400, 402 (Tex. Crim. App. 1985), that where the State relies on the law of parties,
no affirmative finding of a deadly weapon is permissible unless the defendant personally used or
exhibited a deadly weapon.

 We agree that when the State relies on the law of parties for a conviction, and seeks
a finding of use of a deadly weapon, Travelstead requires an affirmative finding by the trier of
fact that the defendant, himself, used or exhibited a deadly weapon during the commission of the
offense. However, that is exactly what happened here. Upon submission of a special issue, the
jury found that appellant used or exhibited a deadly weapon during the commission of the offense. 
Point of error nine is overruled.

 In his first six points of error, appellant complains that the trial court erred by
admitting Bailey's statements to his wife concerning Eckels' kidnapping and murder.

 Although we are unable to locate a written motion stating the basis for appellant's
challenge, the trial court held a pretrial hearing to determine the admissibility of Bailey's
statement to his wife, Angela. See Tex. R. Crim. Evid. 104. For purposes of the hearing, the
State offered the written statements that Angela and appellant had given to the sheriff's office. 
The State urged that the statements reflected the existence of a conspiracy between Bailey and
appellant to kidnap and murder Eckels, and that the statements Bailey made to his wife were thus
not hearsay but were admissible under rule 801(e)(2)(E) as statements of a coconspirator. See
Tex. R. Crim. Evid. 801(e)(2)(E). The State further argued that the conspiracy included an
agreement to maintain a code of silence so that neither coconspirator would be caught. Finally,
the State argued that Bailey's statements to Angela, if hearsay, were nevertheless admissible under
the exception in rule 803(24) as a statement against interest. See Tex. R. Crim. Evid. 803(24).

 Appellant objected to the evidence as a whole, taking the position that none of
Bailey's statements were admissible. The defense argued that there was no conspiracy between
appellant and Bailey and that, even if there were, the statements were not made in furtherance of
the conspiracy. Counsel further objected that the statements to Angela were not statements against
interest because they tended to exculpate Bailey. Finally, counsel asserted a general right of
confrontation. The trial court ruled that Bailey's statements to Angela were admissible against
appellant.

 Angela's written statement was never introduced at trial. When Angela testified
at trial, defense counsel objected to her testimony on the ground that it was "hearsay" and asked
for a running objection to "all of this testimony." The court overruled the first objection but
granted the running objection.

 On appeal, appellant complains that Bailey's statements to Angela were not
admissible against him at his trial. We agree that the evidence was admissible at least as
statements against interest under rule 803(24). However, appellant's complaints must fail for
other reasons, as well.

 Appellant waived his complaint as to the admissibility of Bailey's statements by
introducing Scott Martin's written statement at trial. Martin met Angela one year after Bailey
killed himself and was living with Angela at the time of trial. Martin testified before Angela or
any other of the participants. Without referring to the crime or giving any details, Martin testified
generally that he learned information from Angela about Bailey's suicide that concerned him, and
that he eventually went to the police with that information.

 During cross-examination, the defense focused on discrepancies in how Martin had
described Angela's arrangement with appellant involving the brown Camaro automobile. 
Appellant had the car when Martin met Angela, kept the car eight or nine months, and returned
it when Martin called him pretending to be an attorney. The defense elicited that Martin had
given the sheriff's office a written statement containing the incorrect assertion that Angela had
loaned appellant her car when Martin knew she was trying to sell it to him. The defense
questioned Martin about this discrepancy, and then introduced into evidence Martin's written
statement, without limitation. Apparently Angela also had told Martin about her conversation
with Bailey, and Martin's written statement describes the statements Bailey made to Angela the
morning of December 3, 1989. Thus, Martin's statement contains the same evidence appellant
sought to exclude from Angela. Any error in its admission, therefore, is waived.

 Inadmissible evidence can be rendered harmless if other evidence admitted at trial
without objection proves the same fact. Anderson v State, 717 S.W.2d 622, 628 (Tex. Crim.
App. 1986), cert. denied, 496 U.S. 944 (1990). The erroneous admission of testimony over
objection is rendered harmless beyond a reasonable doubt, both as to conviction and punishment,
when the same testimony comes in without objection through another witness. Mayes v. State,
816 S.W.2d 79, 88 (Tex. Cr. App. 1991).

 When a defendant at trial offers the same evidence to which he earlier objected, he
cannot complain about the admission of the evidence on appeal. Maynard v. State, 685 S.W.2d
60, 65 (Tex. Crim. App. 1985); Womble v. State, 618 S.W.2d 59 (Tex. Crim. App. 1981)y. Any
error regarding improperly admitted evidence is thereby waived by the accused. Rogers v. State,
853 S.W.2d 29, 35 (Tex. Crim. App. 1993); Narvaiz v. State, 840 S.W.2d 415, 430 (Tex. Crim.
App. 1992), cert. denied, 113 S.Ct. 1422 (1993); see Ethington v. State, 819 S.W.2d 854, 858
(Tex. Crim. App. 1991). The complaint is not waived when the accused introduces the evidence
in order to meet, rebut, destroy, deny, or explain the improperly admitted evidence. Rogers, 853
S.W.2d at 35; Maynard, 685 S.W.2d at 65.

 Martin's statement, however, did not in any way explain, deny, or rebut Angela's
testimony or Bailey's statements to her. Martin merely repeats what Bailey told Angela,
consistent with her trial testimony. We hold that, even if Angela's testimony were inadmissible,
appellant waived any error by introducing Martin's statement containing the same evidence. 
Points of error one through six are overruled.

 In any event, we hold that admission of Bailey's statements, if improper, was
harmless beyond a reasonable doubt in light of appellant's confession, the testimony of the other
witnesses, and the fact that the court charged on the law of parties. The statements of Bailey and
appellant were consistent as to events and differed only with respect to who pulled the trigger. 
Appellant said Bailey got mad and shot Eckels; Bailey said appellant got nervous and shot him. 
Nevertheless, the jury did not have to find appellant shot Eckels in order to convict him of the
offenses charged. We note that the jury assessed appellant only half as much punishment for the
murder as for the aggravated kidnapping.

 We note also that appellant argues that admission of Bailey's statements at trial
violated his rights to due process and due course of the law under both the federal and state
constitutions. See U.S. Const. amend. V; Tex. Const. art. I, § 13. Appellant never objected on
these grounds below and clearly failed to preserve any error on this basis. See Briggs v. State,
789 S.W.2d 918, 924 (Tex. Crim. App. 1990) ("Even constitutional errors may be waived by
failure to object at trial."); City of Houston v. Leach, 819 S.W.2d 185, 191 (Tex. App.--Houston
[14th Dist.] 1991, no writ) ("It is well settled that an objection made at trial that does not comport
with the point raised on appeal presents nothing for review.") (citations omitted); Tex. R. App.
P. 52(a). For these additional reasons, points of error five and six are overruled.

 In point of error number ten, appellant argues his trial counsel was ineffective
because he failed to object to part of the State's jury argument. Appellant complains that during
argument the State misstated the law of parties.

 The standard for evaluating a claim of ineffective assistance of counsel was set forth
in Strickland v. Washington, 466 U.S. 668 (1984). The burden of proof is on the defendant to
meet the following two-pronged test: (1) the defendant must show counsel's performance was
deficient, based on a "reasonably effective assistance" standard; and (2) the defendant must show
the performance prejudiced his defense so as to deprive him of a fair trial. Strickland, 466 U.S.
at 687; Stafford v. State, 813 S.W.2d 503, 505-506 (Tex. Crim. App. 1991); Wilkerson v. State,
726 S.W.2d 542, 548 (Tex. Crim. App. 1986); O'Hara v. State, 837 S.W.2d 139, 143 (Tex.
App.--Austin 1992, no pet.). Whether counsel was ineffective is to be judged in light of all the
circumstances; thus, "whether the appellant received error-free representation is not the test; that
appellant's counsel made some mistakes at trial does not show ineffective assistance." Davis v.
State, 830 S.W.2d 762, 765 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). Furthermore, a
court must evaluate the challenged conduct from counsel's perspective at the time of trial and not
by hindsight. Strickland, 466 U.S. at 689; Stafford, 813 S.W.2d at 506; Wilkerson, 726 S.W.2d
at 548. Finally, there is a strong presumption that counsel's conduct meets the reasonable
assistance standard; thus, "the defendant must overcome the presumption that, under the
circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466
U.S. at 689 (emphasis added); Stafford, 813 S.W.2d at 506.

 During the State's jury argument, the State argued, in part:



 Nobody could stop Michael Bailey. Well, he [appellant] knew that, he was
with him every day. If he didn't like the way he acted, if he didn't want to take
part, if he didn't want to participate, if he didn't want to encourage and continue
along with his type of conduct he had no business spending time with him. But he
did it day after day after day and we know about one night that he was with him.
. . .


 Ladies and gentlemen, the announcement of what the intention was of these
individuals was made on 34th Street in the presence of Matthew Pyle and Sean
Bauman. The intention was to take them away, hold these individuals hostage and
murder them. To blow them away. To kill them.


 Sean Bauman got out of the car. He did not want a part of it. He
registered as to what the intent was. He knew what was about to happen. Matt
Pyle got out to try to get help. Did he, (indicating), get out to try to get help? Did
he say, "Don't do this?" Did he try to help Rex Eckels get out of that car? No. 
Why? Because his entire intent was to participate. Participate in what had already
been proclaimed to be the plan, an aggravated kidnapping and a murder. He
stayed in that car. . . .


 [Referring to appellant shooting Eckels in face with pellet gun] And ask
me, ladies and gentlemen, is that terror? Is that terrorizing someone? Pointing a
gun in their face and shooting it? Is that torture, to be on the other end of a
pointed gun from a stranger?


 Is that encouraging Michael Bailey, if Michael Bailey is the one planning? 
To go ahead and continue in this conduct of causing serious bodily injury, of
murdering someone? He debilitated this man. He shot him in the face, an inch
into his skin.


 He then--somehow the car stopped but still did he get out? Did he seek
help? Did he try and stop Michael Bailey or say, "I don't want any part of this?" 
No. . . .


 I suggest to you, ladies and gentlemen, he was aiding, encouraging,
assisting, all the things listed in here. . . .



 Appellant contends that parts of the above argument were an attempt by the State
to convince the jury that appellant was guilty as a party if he did not prevent Bailey from
committing the offenses. We disagree. It seems clear, after viewing the above statements in
context, that the State was attempting to persuade the jury, as it was required to prove, that
appellant was "acting with intent to promote or assist the commission of the offense . . . ." Tex.
Penal Code Ann. § 7.02 (West 1974). The State was not arguing that appellant was guilty for
failing to prevent the crime but was attempting to show from the evidence that appellant intended
to assist Bailey and, in fact, did assist, aid, and encourage him in committing the offense. 
Counsel's failure to object to this argument was not error, and, thus, we cannot say he failed to
render effective assistance. Point of error number ten is overruled.

 The trial court's judgment is affirmed.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Jones

Affirmed

Filed: August 17, 1994

Do Not Publish

1.   "LSD" is an hallucinogenic controlled substance technically known as lysergic acid
diethylamide, referred to herein as LSD or by its street name "acid".
2.   Section 7.01 of the Texas Penal Code states in part:


(a) A person is criminally responsible as a party to an offense if the offense
is committed by his own conduct, by the conduct of another for which
he is criminally responsible, or by both. . . .


Tex. Penal Code Ann. § 7.01 (West 1974).


Section 7.02 states in pertinent part:


(a) A person is criminally responsible for an offense committed by the
conduct of another if:


 . . . 


 (2) acting with intent to promote or assist the commission of the
offense, he solicits, encourages, directs, aids, or attempts to
aid the other person to commit the offense. . . .


Tex. Penal Code Ann. § 7.02 (West 1974).
3.   Other testimony at trial indicates he actually pulled the shotgun at this point.
4.   Angela verified through her testimony that she owned a 1980 brown two-door
Camaro.
5.   Although in the statement he gave police, Pyle states that the driver held both
weapons, at trial, he stated that after thinking about it a lot since that night, there was no doubt
in his mind that appellant, in fact, had a gun in his hand. He stated that when the driver
pulled out the pistol, he handed appellant the shotgun.
6.   There was evidence that appellant and Bailey were very similar in appearance and
could pass for brothers. When shown a picture of both appellant and Bailey, Pyle
correctly identified Bailey as the driver.
7.   If appellant is attempting to imply that a pellet gun is not a deadly weapon, then we
overrule this point because he has provided no factual or legal basis on which to sustain
such an argument. See Tex. R. App. P. 74(f).