

NUMBER 13-17-00301-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**ROBERT RAY PEREZ,**                                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                              **Appellee.**

**On appeal from the 36th District Court
of San Patricio County, Texas.**

# MEMORANDUM OPINION

**Before Justices Contreras, Longoria, and Hinojosa
Memorandum Opinion by Justice Longoria**

Appellant Robert Ray Perez appeals his conviction for murder, a first-degree felony. *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (West, Westlaw through 2017 1st C.S.). The jury returned a guilty verdict and punishment was assessed at thirty years' imprisonment and a $10,000.00 fine. Perez argues on appeal that there was insufficient

evidence to support his conviction.  We modify the judgment to correct a clerical error and, as modified, affirm.

## I. BACKGROUND

On or about March 4, 2015, Lou Anthony Gutierrez was fatally shot in Mathis, Texas.  The State presented evidence alleging that two men brought Gutierrez to an isolated ranch and shot and killed him.  Perez was charged by indictment with one count of murder and one count of engaging in organized criminal activity.  *See id.* §§ 19.02(b)(1), 71.02 (West, Westlaw through 2017 1st C.S.).

The State's theory of the case was that Alexis Arguijo, a member of the Texas Chicano Brotherhood (TCB) street gang, had a negative history with Gutierrez and was instructed by the TCB to murder Gutierrez.  Arguijo, according to the State, sought Perez's assistance in carrying out the murder.  Perez is also a member of the TCB.

At trial, the State presented evidence that Arguijo had been in a relationship with Gutierrez's cousin and that Gutierrez had previously lived with Arguijo, off and on throughout the months leading up to his death.  There was testimony that Gutierrez may have broken into Arguijo's home and was kicked out of the house.  Further, the testimony also showed that Gutierrez used synthetic marijuana, a drug that Arguijo sold.  Both the State and Perez elicited testimony regarding Gutierrez's inability to pay for the product that he received from Arguijo.  The State argued that Arguijo had animosity toward Gutierrez and, as instructed by the TCB, planned to murder Gutierrez.  The State also called Javier Gutierrez who was also a member of the TCB and who stated that Perez told him that he shot the decedent as part of a gang-related murder with Arguijo.

2

The State's theory alleged that Arguijo sought out the assistance of Perez in planning and executing the murder of Gutierrez. Arguijo asked Perez to provide him with synthetic marijuana to get Gutierrez high, indicating that Gutierrez acted differently when high and would be easier to murder because of his lowered inhibitions. The State alleged that Arguijo and Perez then brought Gutierrez out to the isolated property and shot and killed him.

Perez, in his interview with the police, initially admitted that he was a member of the TCB and that he did provide the synthetic marijuana to Arguijo. Further, during the course of his interview, while he initially was adamant that he was not present at the murder, he eventually told the officers he was there and witnessed Arguijo shoot Gutierrez three times. He explained that he, Arguijo, and Gutierrez had smoked synthetic marijuana together during the day at Arguijo's house. Then, later toward the evening, the three got into Arguijo's car and drove out to the isolated ranch, under the guise of going to shoot Arguijo's rifle. Perez stated that while Arguijo did not directly tell him his plan, he knew what was going to happen because Arguijo had shown him his pistol and he knew that Gutierrez was in trouble with the TCB for robbing another gang member's house. According to Perez in his interview, when they got to the property, the three exited the vehicle. Perez went to the truck to retrieve the rifle and while he was doing so, Arguijo and Gutierrez went to the front of the vehicle. Perez then stated that Arguijo shot Gutierrez three times and then proceeded to kick the deceased in an angry manner. Perez said he was afraid and immediately got back into the vehicle and urged Arguijo to do the same. When Arguijo got into the vehicle, Perez made Arguijo drive him home. Perez indicated to the officers that he went with Arguijo that evening because he was

3

afraid of the repercussions from the TCB if he chose not to go.  He explained his fear, for both himself and his family, of the TCB and their methods of retaliation.

The jury was charged with determining Perez's guilt or innocence as to the murder charge only.  They returned a verdict of guilty and assessed punishment at thirty years' imprisonment and a $10,000.00 fine. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By his sole issue, Perez contends that the jury did not have sufficient evidence to convict him for the murder of Gutierrez.

### 1.    Standard of Review and Applicable Law

In order to determine if the evidence is legally sufficient in a criminal case, the appellate court reviews all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Brooks v. State*, 323 S.W.3d 893, 905 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014).  This standard tasks the factfinder, the jury in this case, with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from it.  *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).  The legal-sufficiency standard upheld in *Jackson v. Virginia* is the only standard that should be applied in criminal appeals; thus, we do not perform factual sufficiency reviews in criminal cases.  *See Brooks*, 323 S.W.3d at 894.  Our role on appeal is limited to determining whether the necessary inferences drawn by the jury are reasonable based upon the cumulative force of all the evidence when viewed in the light most favorable to the verdict.  *Id.*  If the record supports conflicting inferences, we

4

presume that the jury resolved the conflict in favor of its verdict and defer to that determination. *Murray*, 457 S.W.3d at 448–49; *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014).

We measure the sufficiency of the evidence against the essential elements of the offense defined by the hypothetically correct jury charge for the case. *Anderson v. State*, 416 S.W.3d 884, 889 (Tex. Crim. App. 2013). The hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict its theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Here, the hypothetically correct jury charge for murder would state that Perez committed the offense of murder if he intentionally or knowingly caused the death of Gutierrez. Tex. Penal Code Ann. § 19.02(b)(1). A hypothetically correct charge would also include an instruction on the law of parties. Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he encourages, directs, aids, or attempts to aid the other person to commit the offense. *Id.* § 7.02(a)(2) (West, Westlaw through 2017 1st C.S.).

Evidence is sufficient to convict the defendant under the law of parties where he is physically present at the commission of the offense and encourages the commission of the offense either by words or other agreement. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985); *Tarpley v. State*, 565 S.W.2d 525, 529 (Tex. Crim. App. 1978). To convict someone as a party to an offense, the evidence must show that at the time of the offense the parties were acting together, each doing some part of the execution of the

common purpose. *Cordova*, 698 S.W.2d at 111; *Brooks v. State*, 580 S.W.2d 825, 825 (Tex. Crim. App. 1979).

In determining sufficiency of the evidence, we consider all the evidence, admissible and inadmissible. *Gardner v. State,* 699 S.W.2d 831, 835 (Tex. Crim. App. 1985); *see Johnson v. State*, 967 S.W.2d 410, 411–12 (Tex. Crim. App. 1998).

## 2.     Analysis

Perez contends that the State failed to prove that he caused the death of Gutierrez and failed to prove that he was a party to the murder of Gutierrez.  Perez concedes that the State proved he was present when Arguijo murdered Gutierrez, however, in arguing that he was not a party to the murder, Perez says that the State failed to prove that he and Arguijo had a "meeting of the minds and entered into a conspiracy before Gutierrez's murder" and "failed to prove Perez had intent to assist or promote Gutierrez's murder." Participation in a criminal offense may be inferred from the circumstances.  *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987).  While agreement by the parties to act together in a common design can seldom be proved by direct evidence, reliance can be had on the actions and words of the parties showing, by direct or circumstantial evidence, an understanding and common design to do a certain act. *Ex parte Prior*, 540 S.W.2d 723, 727–28 (Tex. Crim. App. 1976); *see Hernandez v. State*, 52 S.W.3d 268, 280 (Tex. App.—Corpus Christi 2001, no pet.).

The jury heard directly from Perez in his interview with the police that he was aware that something bad was going to happen to Gutierrez, and he had seen the pistol that Arguijo intended to use.  He further told them he provided Arguijo with synthetic marijuana to get Gutierrez high to make Gutierrez "act stupid," as requested by Arguijo.  While he

6

told the officers it was out of fear, Perez admitted that he went with Arguijo to bring Gutierrez to the isolated property where Arguijo intended to and did shoot and kill Gutierrez. The jury heard additional testimony that Perez told Javier Gutierrez that he was involved in the murder. The jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.).

Therefore, viewing all of the evidence in the light most favorable to the verdict, we conclude that a reasonable factfinder could find beyond a reasonable doubt that Perez committed the offense of murder by the law of parties. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 894. We overrule Perez's sole issue.

### III.  REFORMATION OF THE JUDGMENT

On review of the record, we observe that the written judgment of conviction for murder contains an error under the listed statute for offense for which Perez was convicted. The judgment states that Perez was convicted under sections 19.03 and 71.02 of the Texas Penal Code, which refer to capital murder and engaging in organized criminal activity. *See* TEX. PENAL CODE ANN. §§ 19.03, 71.02 (West, Westlaw through 2017 1st C.S.). However, the offense on which the jury was charged was murder under section 19.02(b)(1). *See id.* § 19.02(b)(1).

7

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* TEX. R. APP. P. 43.2(b) (authorizing court of appeals to modify trial court's judgment and affirm it as modified); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (concluding that Texas Rules of Appellate Procedure empower courts of appeals to reform judgments). Accordingly, we modify the judgment of conviction to reflect that Perez was convicted of murder under section 19.02(b)(1) of the Texas Penal Code.

## IV. CONCLUSION

We modify the judgment to correct the clerical errors and, as modified, affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
9th day of August, 2018.